PENROSE v. SKINNER, Collector of Internal Revenue.

(District Court, D. Colorado.   August 14, 1923.)

No. 7016.

1. Internal revenue ☞25—Abatement of increased income tax by Commissioner of Internal Revenue not reviewed by court.

Abatement of increased income tax by Commissioner of Internal Revenue after hearing on the merits cannot be reviewed by the federal court, in absence of fraud or mistake.

2. Internal revenue ☞25—Commissioner of Internal Revenue cannot overrule decision of predecessor not erroneous or tainted with fraud.

The Commissioner of Internal Revenue cannot overrule or ignore action of predecessor in abating increased income tax after hearing on the merits, unless decision of predecessor was erroneous or tainted with fraud.

3. Internal revenue ☞38—Answer in action to recover income tax held demurrable in view of records attached to complaint.

In action to recover income tax paid under protest, answer admitted allegations of complaint as to original tax reassessment, abatement by one Commissioner, and reassessment and refusal to abate by succeeding Commissioner, and raised issue as to whether first Commissioner's abatement was conclusive, precluding reassessment by succeeding Commissioner. Held demurrable, where records attached to complaint showed that first Commissioner allowed abatement after hearing on merits as to losses sustained by plaintiff.

At law.   Action by Spencer Penrose against Mark A. Skinner, Collector of Internal Revenue for the District of Colorado.   On demurrer to answer.   Demurrer sustained.

See, also, 278 Fed. 284.

C. C. Hamlin and James H. Rothrock, both of Colorado Springs, Colo., for plaintiff.

Granby Hillyer, U. S. Atty., and John A. McCann, Asst. U. S. Atty., both of Denver, Colo., for defendant.

KENNEDY, District Judge.   This is an action in which the plaintiff seeks to recover a tax paid to the collector of internal revenue for the district of Colorado under a protest made at the time of payment. An amended answer was filed to the amended complaint in the cause, which answer has been attacked by general demurrer, and in this form the matter is now before this court.

It appears from the allegations of the amended complaint that in 1914 the plaintiff, within the time provided by law, filed with the defendant his income tax return for the year 1913, and paid the defendant the tax such return purported to show due and owing for the latter year   An investigation was subsequently made by an agent of the revenue department, and as a result, through the action of the Commissioner, an additional tax was demanded of the plaintiff in a sum exceeding $12,000.   Subsequently the plaintiff filed with the department his claim for abatement of the increased tax, which claim, after being further considered by the Commissioner, was allowed, and the additional tax abated.   This action was taken on or about the month

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of March, 1916, and during the incumbency of Commissioner Osborn. Thereafter his successor, Commissioner Roper, reassessed said tax against the plaintiff. A claim for abatement applied for was denied, and in complying with the ruling of the Commissioner, in order to avoid the payment of a penalty threatened to be assessed, he paid the additional tax under protest, and plaintiff now seeks to recover the additional tax so assessed and paid.

The answer of the defendant admits substantially all the steps alleged to have been taken in connection with the additional tax, but denies that the decision of Commissioner Osborn in originally abating the additional tax was based upon the question as to what is now claimed to be the merits of the controversy; that is, as to whether certain losses in handling stocks by plaintiff were actually incurred and properly assigned for losses during the year 1913. The gist of the matter before this court, therefore, as affected by the demurrer now being considered, is as to whether or not there were such a determination by Commissioner Osborn of the matter in his abatement of the tax as to make the matter res adjudicata.

[1] If it may be determined upon the face of the pleadings that there was an adjudication of the matter upon its merits by Commissioner Osborn, in the absence of fraud or mistake, this court is without jurisdiction to now go into the matter, as the Supreme Court has held that, under the circumstances outlined, the action of a department head, which is founded upon the facts touching the controversy presented to it, is final. In the case of United States v. Kaufman, 96 U. S. 567, at page 570 (24 L. Ed. 792), the court say:

"These facts are, in effect, that the claimant, who was a brewer, on the 3d day of May, 1873, paid to the internal revenue collector of his district $100, as the special tax on his business for one year, from May 1, 1873, to April 30, 1874, for which a special tax stamp was given him by the collector; that, May 6, 1874, he applied to the Commissioner of Internal Revenue to refund $50 of this amount, as he had only manufactured 350 barrels during the year; that evidence in support of this application was submitted, and the Commissioner on the 5th of July, 1874, certified to the Comptroller of the Treasury that the claimant had returned to him an internal revenue special tax stamp of the face value of $50, for which he was entitled to have refunded him $47.50; and that on the same day the Commissioner notified the claimant of the allowance of his claim to that amount, for which a certificate had been lodged with the Comptroller of the Treasury.

"It is now insisted that the finding of an allowance by the Commissioner is not enough, and that the court should have gone behind the allowance, and found the facts in respect to the original claim. Such, we think, is not the law. To say the least, the allowance of a claim under this statute is equivalent to an account stated between private parties, which is good until impeached for fraud or mistake. It is not the allowance of an ordinary claim against the government, by an ordinary accounting officer, but the adjudication by the first tribunal to which the matter must by law be submitted. Until so submitted, and until so adjudicated, there is not even a prima facie liability of the government; but when submitted, and when allowed upon the adjudication, the liability is complete until in some appropriate form it is impeached. When, therefore, the court found the adjudication against the government, without impeachment, the liability to pay was established."

The decision in the case at bar rests upon what view the court takes as to one particular angle of the controversy. It is the claim of the defendant that the original finding of Commissioner Osborn was based

solely upon a hearing in which it was sought to be determined whether or not the plaintiff was, at the time of the alleged losses for which he ·claimed credit, engaged as a licensed broker or member of a stock exchange, so as, under a rule of the department, to be entitled to receive credit for the losses. While it is the contention of the plaintiff that the hearing upon the abatement before Commissioner Osborn, and the evidence there submitted was upon the merits of the controversy, and as to whether or not the losses in stocks were actually sustained by the plaintiff, and properly included for the year to which they were allocated by the Commissioner. If a ruling is to be reached sustaining the demurrer, it must be found from the pleadings that there was a determination by Commissioner Osborn, based upon the evidence before him, fixing the actual losses in stocks, and allowing · them to plaintiff as losses incurred during the year 1913.

[2] The subsequent action of Commissioner Roper in reopening the matter and compelling plaintiff to pay the tax has little to do with the controversy here, as I think no one will contend that a succeeding Commissioner could overrule or ignore the decisions of his predecessor, unless such decision were in law erroneous or tainted with fraud. Any other conclusion would bring chaos in· governmental administration and cause untold annoyance to our citizens.

[3] Under the practice in the courts of the state of Colorado, where this cause arises, the exhibits attached to a complaint, and therein referred to, become a part of the pleading and must be considered as such. It affirmatively appears that by Exhibit B–1 attached to the petition that the so-called losses were originally disallowed by Commissioner Osborn. Such disallowance was upon the ground that the plaintiff was not a member of a stock exchange and did not buy and sell securities for others as well as himself, as the language in this document reads as follows:

"As Mr. Penrose is not a member of a stock exchange, and does not buy and sell securities for others as well as for himself, these losses have been disallowed, not having been incurred in trade, in accordance with Treasury Decision 2005."

After this it is shown by Exhibit D that the plaintiff applied for a remission of the taxes, in which he sets forth that he has suffered the. losses and should be entitled to a deduction from his income for the year 1913. By Exhibit E it appears that the defendant, under instruction from the Commissioner, called for additional evidence supporting plaintiff's claim for abatement, which demand is in the following language:

"The loss that may have been sustained appears to have been sustained entirely upon the stock holdings, and it is the desire of this office that *the actual loss of the stock*, not based on par or market value, be determined, in order that the proportionate part thereof *applicable to the year 1913* may be allowed."

In response to this request the plaintiff furnished the department with a detailed report and evidence of the losses sustained in stocks for the year 1913, which seems to me to have no other significance than that of showing the handling of the stock, with a view of determining

the losses sustained, without regard to the matter of whether the plaintiff was a licensed broker, or as to whether or not the losses were incurred "in trade" under the treasury ruling.

I find nothing in the request by the Commissioner for further evidence supporting the claim for abatement or in the evidence so furnished, which tends to show that the Commissioner was demanding or receiving evidence touching the point as to whether the plaintiff was a licensed broker, and therefore sustained a loss within the so-called "in trade" clause of the Revenue Act, but both the demand and the evidence are directed to the actual loss and when sustained. At any rate, the theory of the department that losses, to be allowable, must have been incurred while the claimant was a member of a stock exchange, and unless so incurred was not incurred "in trade," within the meaning of the law, has been exploded by the courts. Bryce v. Keith (D. C.) 257 Fed. 133. Yet the demands of the Commissioner upon the plaintiff subsequently made were based solely upon this theory, as particularly shown by Exhibit H–1 attached to the complaint.

This feature of the controversy, however, may be said to be of no controlling influence in this hearing, as a decision must rest upon what the record shows was before Commissioner Osborn at the time he allowed the abatement of taxes, as based upon the alleged losses sustained by plaintiff, and fixing them as applicable to the year 1913. As all the different steps on the part of the plaintiff and the Commissioner in controversy are admitted by the defendant's answer, as well as the exhibits which were in evidence before the Commissioner at the time of the abatement heretofore allowed, and the act of abatement, the cause is as fully before the court for determination as if a trial were had and the exhibits introduced in evidence.

For the reasons stated, the demurrer to defendant's amended answer will be sustained, reserving to defendant his proper exceptions in the premises.