PECK & HILLS FURNITURE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16108. Promulgated June 11, 1929.

*J. Marvin Haynes, Esq.*, for the petitioner.
*Brice Toole, Esq.*, for the respondent.

1010

OPINION.

MARQUETTE: The petitioner's right to value its closing inventory for the fiscal year 1920, upon the basis of cost or market, whichever

is lower, in accordance with the provisions of Treasury Decision 3108, does not appear to be disputed by the respondent, though if it were, we should not hesitate to say that upon the facts presented the respondent could not successfully challenge that right. Cf. *J. W. and A. P. Howard Co.*, 15 B. T. A. 1096. The issue necessitates only a decision as to the value of the closing inventory, upon the basis of cost or market, whichever is lower. As to that, the evidence submitted by the petitioner is complete and convincing, and it has enabled us to find that such value is $2,215,704.68.

The revision of the inventory valuation to the cost or market basis was accomplished by petitioner's officers in collaboration with the revenue agent who examined the books for the years in question. More than four months were taken up by the work of this revision. Every effort was made, which could reasonably be expected to be made, to secure complete and authentic data as to market conditions, and the entire work of revision was carried on in a sincere effort to reach a result that would meet the requirements of respondent's regulations. Three witnesses who have been in the petitioner's employ in executive and managerial capacities for periods of 17 to 34 years, who did the buying and selling for the petitioner, who were in close contact with the markets and knew the conditions of the markets at June 30, 1920, and who actually supervised the revision of the inventory, testified in detail as to the procedure followed and as to the method of pricing the various classes of merchandise in the inventory. Their testimony is corroborated by that of the former revenue agent who worked with them in the revision of the inventory. He testified that he checked and verified all of the inventory figures submitted to him. There are filed with his report to the respondent, as exhibits, copies of about 200 letters from manufacturers from whom the petitioner made its purchases, giving information as to market conditions and quotations, as of the inventory date. These were obtained at his solicitation for the purpose of verifying market prices submitted to him by petitioner's officers. He testified, also, that during the course of his examination he held a great many conferences with representatives of manufacturers for discussing market conditions, with a view to verifying his own conclusions and those of petitioner's officers as to the market value of various classes of merchandise in the inventory. In his report to the respondent, he recommended the acceptance of an inventory valuation based upon cost or market, whichever is lower, of $2,215,167.20.

The testimony of these witnesses leaves no doubt in our minds that the figure of $2,215,704.68 fairly reflects the value of the inventory in question, upon the basis of cost or market, whichever is lower,

▬▬▬▬▬▬▬▬▬▬▬▬

and net income should be recomputed upon the basis of a closing inventory of that amount.

The only other question is as to the value of the leasehold that the petitioner acquired upon the dissolution of the Manufacturer's Furniture Exchange. We are satisfied from the evidence presented to us on this issue that the leasehold had a fair market value of $400,000 when the petitioner acquired it. It should, therefore, be included in the petitioner's invested capital for the fiscal year ended June 30, 1920, in the amount of $400,000, with proper allowances for exhaustion since the date of acquisition.

The hearing and determination of the Board was limited in the first instance to issues other than those specified in Rule 62 (b) and (c), and, in view of our determination in respect thereof, the net taxable income of the petitioner will be reduced and its invested capital will be increased. Therefore, the issue as to special assessment may not be longer urged by petitioner. The respondent is therefore directed to file with the Board a computation of the tax liability for the taxable year. If upon the filing and service of such computation, petitioner desires to proceed further under Rule 62 (b) on the issue of abnormalities, and files a motion to that effect, the proceeding will be placed upon the day calendar on the abnormality question; otherwise, judgment will be entered under Rule 50.