**PICTORIAL REVIEW CO. v. HELVERING,**
Com'r of Internal Revenue.
No. 5901.

Court of Appeals of the District of Columbia.
Argued Dec. 5, 1933.
Decided Jan. 2, 1934.

Nelson T. Hartson and James C. Rogers, both of Washington, D. C., for petitioner.

G. A. Youngquist, Sewall Key, Walter L. Barlow, C. M. Charest, E. B. Prettyman, and S. S. Faulkner, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

## GRONER, Associate Justice.

During the year 1924 the Pictorial Review Company of Georgia, the Pictorial Review Holding Company, the Publishers' Commercial Corporation, the Ninth Avenue & Thirty-Fourth Street Corporation, the Excella Corporation, and this petitioner, the Pictorial Review Company, were duly organized and existing corporations. Petitioner owned all the issued and outstanding stock of each of the other above-named corporations, except the Excella Corporation, of which petitioner owned 20.94 per centum. Of the balance, 76.05 per centum was owned by the various stockholders of petitioner, making a total of 96.99 per centum of the issued stock of the Excella Corporation owned by petitioner or petitioner's stockholders. Excella, during all of the times in question, had no separate plant or place of business and no officers or employees who were not officers and employees of petitioner. Its entire business was carried on by petitioner as a department of its own business, and it was created and functioned only because, for competitive reasons, petitioner did not wish to market cheaper merchandise under its own name.

This proceeding involves petitioner's income tax liability for the year 1924. The record shows that on March 15, 1925, petitioner filed a tentative return, and on April 15, following, a final consolidated return for the year 1924. The return so filed *did* include all the other companies and *did not* include Excella, and that company at the same time filed its separate return. The reason Excella filed a separate return was because at that time article 633 of Treasury Regulations 65 made such action on its part mandatory, but in 1927 this particular regulation was revised by the Treasury Department and the statute differently interpreted, the result of which was to bring Excella within its terms. Thereupon petitioner, availing itself of the option given by the statute, as then interpreted and confirmed by regulations, at once filed an amended consolidated return for the year 1924 as well as for prior and subsequent years. This amended return included Excella, and was accepted by the Commissioner as to all the years except the year 1924, as to which it was rejected, though why it should have been accepted for a part of the years and rejected for a single one does not appear.

The question we have to decide, as both sides agree, is: Did the filing of a separate return for 1924 by Excella* constitute as a matter of law an election under section 240 (a) and (c) of the Revenue Act of 1924 (Act 1924, c. 234, 43 Stat. 253, 288, 26 US CA § 993 and note)? The statute is as follows:

"(a) Corporations which are affiliated within the meaning of this section may, for any taxable year, make separate returns or, under regulations prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income for the purpose of this chapter, in which case the taxes thereunder shall be computed and determined upon the basis of such return. If return is made on either of such bases, all returns thereafter made shall be upon the same basis unless permission to change the basis is granted by the commissioner. * * *

"(c) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns at least 95 per centum of the voting stock of the other or others, or (2) if at least 95 per centum of the voting stock of two or more corporations is owned by the same interests."

Article 633 of Regulations 65 adopted and promulgated by the Commissioner with the approval of the Secretary of the Treasury provided in effect that the words of the statute (c) "the same interests" should be deemed to apply only when the percentage of stock held by each stockholder was substantially the same in each of the corporations. This interpretation of the meaning of consolidation or affiliation under (c) of the statute was, as we have pointed out, subsequently corrected, as the result of which consolidated returns were made permissible in cases in which the percentage of stock held by each stockholder was *not* substantially the same in each corporation.

The Board found upon the above-stated facts that the filing of a separate return by Excella in 1924 constituted a binding election and is final. The Commissioner insists that this holding of the Board is right and is in accordance with our own decision in Radiant Glass Company v. Burnet, 60 App. D. C. 351, 54 F.(2d) 718, 719. Petitioner, on the other hand, insists that the filing of the separate return by Excella, being required by a then existing regulation of the Treasury having the force and effect of law, did not constitute the exercise of an election.

■ We think petitioner's position correct. In saying this we are not unmindful of the general rule applied by many courts, including ourselves, which, stated broadly, is that the right of choice or election to file one or another sort of return is exercised by filing the return. But in the Radiant Glass Company Case, supra, in which we concurred in this view, we were dealing with a case of *voluntary* election. There the taxpayer had requested an opinion of the Commissioner upon the consolidated status of its companies in the year 1921. No change having occurred, it acted on this opinion in its 1922 return, and when later it sought to change its manner of return on the ground that it had been misled by the Commissioner's opinion, we held it might not do so, saying: "The ruling of the Commissioner upon the questionnaire in the prior year did not prevent or impair the free exercise of that right. Such a ruling does not have the force of law; nor are the courts bound by it." But while it is undoubtedly true, as we said in the Radiant Glass Co. Case, that the mere opinion of the Commissioner given in answer to a taxpayer's query has not the force of law, it is equally true, we think, that a totally different case is present where, as here, the opinion of the Commissioner is embodied in a regulation which the statute authorizes, for in the latter case the regulation *has* the force and effect of law. Maryland Casualty Co. v. United States, 251 U. S. 342, 349, 40 S. Ct. 155, 64 L. Ed. 297. That the particular statute required and authorized the adoption of regulations specifically in relation to the method and making of consolidated returns has already been adverted to, and, in addition, section 1001 of the act (see 26 USCA § 1245) still further emphasizes the power and duty of the Commissioner in that respect.

■ We have, therefore, here a case in which Excella filed a separate return solely because of a mandatory provision of a Treasury regulation, but which now the Commissioner says was an incorrect construction of the language of the act—in other words, a wrong decision. And such we assume it was and that the later revision is more nearly in consonance with the intent of Congress. But the regulation, while it lasted—some four or five years—was none the less binding, for it is not claimed, nor can it be, that it was not "addressed to and reasonably adapted to the enforcement of" the act, and equally it cannot be suggested, much less urged, that it was so inconsistent with or in conflict with express statutory provision as to be plainly wrong, and unless one or the other it was as binding as the statute itself. Maryland Cas. Co. v. U. S., supra. In plain speaking, as it now develops, it was a definition of the terms of the act which further consideration had shown to be too narrow. But while it continued it was a lawful rule lawfully adopted in the enforcement of the act, and, considered in that aspect, Excella on its part and petitioner on its were bound by its provisions. To hold, therefore, that in filing a separate return Excella manifested a free or deliberate choice would, we think, be patently unjust. If it did not exercise a free and deliberate choice, if what it did is what it was then constrained by law to do, then obviously it did not at the time exercise the option given it by section 240 of the act (26 USCA § 993 and note), and we can think of no good reason in law or justice to say that, once the bar was removed, it was not entitled to assume the status and exercise the rights from which it had been previously excluded. Petitioner, acting on this assumption, promptly on the promulgation of the new regulation filed an amended consolidated return including Excella, and this, we think, it had the right to do and was all it had to do. The amended return was notice to the Commissioner of the exercise by it of its election and was made at the first opportunity afforded it and should have been accepted by the Commissioner as the manifestation of its choice. That it took the form it did is of no real consequence, for, as was said by the Court of Appeals in the Eighth Circuit in Morrow, Becker & Ewing v. Commissioner, 57 F.(2d) 1, 2, "while there is no statutory authority for an amended return, amended returns are frequently permitted." And this is even truer where, as here, they are filed of right. In the Morrow Case the court held, in circumstances very much like those confronting us here, that an amended return should be received, saying in this regard: "The case presented is not one where, the law being well settled, the taxpayer had elected to keep his

books on a certain basis and to make returns accordingly and had afterwards attempted to change the method of accounting or the basis of the return. In that case it would, of course, be proper to hold him estopped, as an orderly administration of the revenue laws would be otherwise impossible. In this case the Commissioner put his refusal to allow the amended return on the ground that petitioner had chosen the installment basis for reporting profits and could not change. This gave no effect to changes in the law and regulations occurring afterwards. In view of the radical changes in the law, of which the petitioner had scant notice, if any, in fairness and justice to the taxpayer the returns should have been received and considered. Taxes are assessed on income and not on honest mistakes of the taxpayer."

In the case at hand the Board took a somewhat different view from that expressed by the court in the case from which we have just quoted, saying in the opinion filed: "The inequities of this case are apparent, but in applying the taxing statutes, we cannot always do equity." But this we mention only in passing. The decision, we think, is not controlled by the equities of the case but rather is founded on petitioner's legal rights construed, as the Supreme Court has said those rights should be construed, liberally in its favor. Bowers v. New York & Albany Lighterage Co., 273 U. S. 346, 349, 47 S. Ct. 389, 71 L. Ed. 676; United States v. Updike, 281 U. S. 489, 496, 50 S. Ct. 367, 74 L. Ed. 984; Bonwit Teller & Co. v. United States, 283 U. S. 258, 263, 51 S. Ct. 395, 75 L. Ed. 1018.

Petitioner in making its original returns used the consolidated form. It thus made the election given by the act. It did not include Excella in this return for the reason, as the Board declared, it was denied this right by "the Commissioner's Regulations." It did, therefore, at the time as much as it was permitted to do, but in doing this it showed unmistakably its purpose to claim the benefits of affiliation. In the light of the changed regulations, it became its duty to include Excella, for as was held in Duke Power Co. v. Commissioner (C. C. A.) 44 F.(2d) 543, the option granted by the act could be exercised only in one of two ways—that is to say, by the filing by *all* of several affiliated corporations of separate returns or by including all of the affiliates in one return. Petitioner here, when allowed to, obeyed this, as we think, correct construction of the law. That it did not do so sooner was not its fault. In

such circumstances to hold that it had made its election and was forever bound thereby would be to apply to the term "election" a meaning we think unsuited to it and wholly contrary to the universally accepted definition that its exercise involves both knowledge and freedom of choice. An election by compulsion or without freedom of choice is, as it is sometimes called, "Hobson's choice," which Webster (1931) defines as a choice without an alternative.

We think the holding of the Board of Tax Appeals was wrong and should be, and therefore is, reversed.

Reversed.