**WILLARD MFG. CO. v. KENNEDY,**
Former Collector.
**SAME v. McCUEN, Collector.**
No. 45.

Circuit Court of Appeals, Second Circuit.
Jan. 22, 1940.

O. Walker Taylor, of Boston, Mass., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and William B. Waldo, Sp. Assts. to Atty. Gen., and Joseph A. McNamara, of Burlington, Vt., for appellee.

Before SWAN, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

SWAN, Circuit Judge.

The taxpayer was engaged in the manufacture of various kinds of cotton garments, such as overalls, khaki pants, duck suits and children's sailor suits and uniforms. Its books were kept on the basis of a fiscal year ending August 31st. In making its federal income and profits tax return for the taxable year ending August 31, 1920, the taxpayer valued its inventory of cotton goods on hand at $167,609.69. On the basis of the return there was a tax liability of some $15,700 which was paid to collector Kennedy. Thereafter in 1926 an additional tax of some $2,300 was determined against the taxpayer and this was paid to collector McCuen, who had succeeded Kennedy as collector of internal revenue for the district of Vermont. Following this payment the taxpayer filed a claim for refund on the ground that the value of its inventory should have been stated as only $135,209.16, with a resulting reduction of tax liability. The commissioner rejected the claim for refund, and in due season the present actions were brought against the collectors. They were tried together, without a jury, in September 1932. Six years later the district judge rendered his decision in favor of the defendants.

The appeal raises two questions: First, whether the taxpayer was entitled to report its inventory at cost or market, whichever was lower; and secondly, if so entitled, was the market lower than the figures used in the taxpayer's return. The district judge answered the first question in the affirmative and the second in the negative. It is the appellant's contention that the record is barren of evidence to support the court's findings on the second issue. The appellees dispute this but assert that in any event the judgments must be affirmed because the taxpayer was not entitled to use market in pricing its inventory.

Originally, in internal revenue accounting, only cost was recognized as the basis for inventories. In December 1917 the Treasury Department promulgated T.D. 2609 (19 Treas.Dec.Int.Rev. 401) and thereafter the 1917 Return form was revised to provide for the basis of (a) cost or (b) cost or market, whichever is lower. In Regulations 45 (1920 edition) appeared a provision in Article 1582 to the effect that: "A taxpayer may, regardless of his past practice, adopt the basis of 'cost or market, whichever is lower' for his 1920 inventory, provided a disclosure of the fact and that it represents a change is made in the return. Thereafter changes can be made only after permission is secured from the Commissioner." In the 1922 amendment to Regulations 45, T.D. 3296 (24 Treas.Dec.Int.Rev. 531), the sentences relating to election were omitted and it was stated: "Taxpayers were given an option to adopt the basis of either (a) cost, or (b) cost or market, whichever is lower, for their 1920 inventories, and the basis adopted for that year is controlling and a change can now be made only if permission is secured from the Commissioner."

In its 1920 return the appellant stated that its inventory was based on "cost". Apparently this was also the basis it used in its returns for the three previous years as well as for the subsequent year 1921. There is no evidence that it ever obtained permission from the Commissioner to change the basis of its 1920 return; or that it ever attempted to change until it filed its claim for refund in December 1926. The cases relied upon by the taxpayer differ in this respect. J. W. & A. P. Howard Co. v. Commissioner, 15 B.T.A. 1096; Peck & Hills Furniture Co. v. Commissioner, 16 B.T.A. 1008; United States Cartridge Co. v. United States, Ct.Cl., 48 F.2d 983. The case last cited is not germane; it appears on page 984 that the taxpayer "had duly elected" that inventories should be priced for its 1918 returns at cost or market, whichever was lower. The record does not support the district court's finding that the plaintiff inventoried its merchandise "at cost or market, whichever·was lower, August 31, 1920, as it had done in prior years." On the contrary its return reported the inventory on the basis of cost and it was not entitled to change that basis, without permission of the Commissioner, in making its claim for refund. Although the plaintiff's claim for refund was not rejected on the ground that it had elected the basis of cost in its 1920 return, we do not think the Commissioner's failure to take this point can be construed as equivalent to granting permission to change the basis of reporting its 1920 inventory.

But even if we were in error in this conclusion, the appellant could not prevail unless we should overrule the court's findings as to the market existing on August 31, 1920. Article 1584 of Regulations 45, as amended, deals with inventories at market. So far as material it is set out in the margin.* The district court made findings, among others, as follows: "August 31st the market prices instead of being nominal were real and actual; but the market was abnormal or unusually inactive instead of normal or active; still, there was an 'open market' for such cloth in substantial volume and the quotations were not 'nominal due to stagnant market conditions', for divers small quantities were traded in daily at 'current bid prices' in the volume usually 'purchased by this taxpayer' until September 30th, when the market prices were materially reduced, and divers subsequent material reductions were frequent." We cannot hold that there was no evidence whatever to support these findings. During the spring and summer of 1920, the prices of raw cotton and of grey goods (from which are made the finished goods used by the taxpayer) declined rapidly. It is customary for the price of grey goods to follow the price of raw cotton and for the price of finished goods to follow the price of grey goods. However, most manufacturers of finished goods did not alter the prices they had set in the first half of 1920 until the middle or end of September 1920, when the prices broke sharply. Because of the anticipated break in prices, purchasers of finished goods bought only in small quantities during June, July and August, but sales did continue through the summer at the old

---

* Art. 1584. Inventories at market.—Under ordinary circumstances, and for normal goods in an inventory, "market" means the current bid price prevailing at the date of the inventory for the particular merchandise in the volume in which usually purchased by the taxpayer, and is applicable in the cases (a) of goods purchased and on hand, and (b) of basic elements of cost (materials, labor and burden) in goods in process of manufacture and in finished goods on hand; exclusive, however, of goods on hand or in process or manufacture for delivery upon firm sales contracts (i. e., those not legally subject to cancellation by either party) at fixed prices entered into before the date of the inventory, which goods must be inventoried at cost. Where no open market exists or where quotations are nominal due to stagnant market conditions, the taxpayer must use such evidence of a fair market price at the date or dates nearest the inventory as may be available, such as specific purchases or sales by the taxpayer or others in reasonable volume and made in good faith, or compensation paid for cancellation of contracts for purchase commitments. Where the taxpayer in the regular course of business has offered for sale such merchandise at prices lower than the current price as above defined, the inventory may be valued at such prices less proper allowance for selling expense, and the correctness of such prices will be determined by reference to the actual sales of the taxpayer for a reasonable period before and after the date of the inventory. Prices which vary materially from the actual prices so ascertained will not be accepted as reflecting the market and the penalties prescribed for filing false and fraudulent returns may be asserted.

prices. Some of the witnesses, however, testified to "at value" prices on and after August 16th; this means that orders then placed could be paid for at prices thereafter to be fixed, which in the present case would mean September prices. Although the transactions were small in volume at the old prices, there was some proof that they were the established market prices in August 1920. Therefore, the court's finding must be sustained, even though the case was so close that had there been a finding to the contrary of the one made, we might have been unwilling to upset it. See Elder Mfg. Co. v. United States, Ct. Cl., 10 F.Supp. 125.

Each of the grounds above discussed is sufficient to sustain the judgments. Accordingly they are affirmed.

