**R. H. MACY & CO., Inc., L. Bamberger & Co., Davison-Paxon Co. and The La-Salle & Koch Company, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.
Jan. 31, 1957.

Cravath, Swaine & Moore, New York City, Roswell Magill, Albert Rosenblum, Donald B. Smiley, Nathan Dreizen, New York City, of counsel, for plaintiffs.

Paul W. Williams, U. S. Atty., Southern District of N. Y., New York City,

Thomas C. Burke, Howard A. Heffron, Asst. U. S. Attys., New York City, for defendant.

BICKS, District Judge.

In this action for refund of Federal income tax and declared value excess profits tax [1] for the fiscal year ended January 31, 1942, plaintiffs have moved for summary judgment and the defendant has cross moved for similar relief. The determinative facts having been in the main stipulated, the decision turns upon the construction and applicability of the Regulations promulgated by the Commissioner of Internal Revenue under Section 22(d) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 22(d).

The plaintiffs [2] (hereinafter referred to as Macy) owned and operated large retail department stores. For many years prior to the fiscal year ended January 31, 1942 Macy employed the so-called retail method of pricing or evaluating its inventories; a method approved [3] by the Treasury Department and in general usage by department store operators. Under that method inventories are taken in terms of selling price dollar values rather than by specific items of merchandise with the consequence that goods in a single department are treated for inventory purposes as being entirely fungible, although in fact they may, and generally do, differ considerably as to type, quality, and price. [4]

In costing a closing inventory it becomes necessary to resort to an assumption as to what goods with what costs have been sold during the year and what goods with what costs remain on hand. One of two assumptions might be used: (1) that an article of merchandise "first in, i. e., the article purchased earliest, was the first one sold and that the articles left in the inventory at the end of the year were purchased last, the so-called FIFO method; or (2) that an article of merchandise "last in", i. e., the article last purchased was the first sold and that the articles left in the closing inventory were the articles first purchased, the so-called LIFO method. Neither assumption can be entirely true; but it is essential to use one or the other as the basis for the retail method. [5]

As long as the price structure remains relatively stable the FIFO method gives satisfactory results. In an era of inflation the method of inventory valuation looms importantly in determining taxable income. During such a period, the cost of goods sold, if values as reflected in the opening inventory are employed, will be lower and the gross profit on sales greater than would be the case if the cost of goods sold were determined under the LIFO method. Under FIFO, in periods of rising prices, taxable income may include profits that result merely from the increase in the value of the inventory on hand; whereas under LIFO

---

1. The complaint seeks a refund in the aggregate amount of $727,523.16. The parties have stipulated, however, that the exact amount will be computed subsequent to the decision on the merits.

2. R. H. Macy & Co., Inc., was the sole stockholder of plaintiffs, L. Bamberger & Co., a New Jersey corporation, Davison-Paxon Co., a Georgia corporation and The LaSalle & Koch Company, an Ohio corporation. On January 31, 1948 the subsidiary corporations were completely liquidated, and their property and assets, including the tax refund claims involved in this suit, were distributed to Macy in complete cancellation and redemption of all of its stock in each of said subsidiaries. Although under the law of its state of incorporation the corporate existence of each of said subsidiaries has

continued to date for the purpose of suing and being sued, the parties have stipulated that in the event it is held the plaintiffs are entitled to refunds, judgment for the entire amount thereof may be entered in favor of Macy on its own behalf and as successor of said subsidiary corporations.

3. T.D. 3058, 3 C.B. 72 (1920); Regulations 111, sec. 29.22(c)–8.

4. For a review of the characteristics of the retail method see Hutzler Brothers Co. v. Commissioner of Internal Revenue, 1947, 8 T.C. 14.

5. The need to indulge in either of these assumptions exists generally—though not universally; it is not confined to taxpayers who use the retail method of inventory valuation.

such book profits are excluded. Increase in corporate tax rates, the steadily increasing rise in prices and the depreciating value of currency that accompanied the disturbed conditions in Europe immediately preceding World War II underscored the importance of this problem. The Congress recognized it by granting taxpayers permission to elect to use the LIFO method. As first enacted [6] permission to use the elective method was confined to taxpayers in certain industries, e.g., producers and processors of certain non-ferrous metals and tanners of hides and skins.[7] In 1939 this permission was extended to all taxpayers.[8] Section 22 (d) of the Revenue Act of 1939, so far as here pertinent, provides as follows:

"(d) Method of inventorying goods. (1) A taxpayer may use the following method [i. e., the elective method] in inventorying goods specified in the application required under paragraph (2): (A) * * * (B) * * * (C) * * *

"(2) The method described in paragraph (1) may be used—

"(A) Only in inventorying goods * * * specified in an application to use such method filed at such time and in such manner as the Commissioner may prescribe; and

"(B) Only if the taxpayer establishes to the satisfaction of the Commissioner that the taxpayer has used no procedure other than that specified in * * * paragraph (1) in inventorying (to ascertain income, profit, or loss, for credit purposes, or for the purpose of reports to shareholders, partners, or other proprietors, or to beneficiaries) such goods for any period beginning with or during the first taxable year for which the method described in paragraph (1) is to be used.

"(3) The change to, and the use of, such method shall be in accordance with such regulations as the Commissioner, with the approval of the Secretary, may prescribe as necessary in order that the use of such method may clearly reflect income."

The provision in subdivision (2) (B), precluding the use of the elective method by a taxpayer who *during* the first taxable year for which it is sought to be used employed some other method " * * * for the purpose of reports to shareholders * * * ", was amended in 1942 [9] retroactively to taxable years beginning after December 31, 1938, to interdict the use of the elective method by taxpayers who used some method other than LIFO " * * * for the purpose of a report or statement *covering* such taxable year". The effect of the amendment was to make the elective method available notwithstanding the issuance of an interim report prepared on another basis.

In December 1939 the Commissioner of Internal Revenue promulgated Regulations pursuant to Section 22(d). From almost the very outset and until 1948 he and other representatives of the Treasury Department and the Bureau of Internal Revenue took the position that the statutory grant of leave to use the LIFO method was not applicable to users of the retail method. The Commissioner's rationale, as stipulated by the parties, was that since users of the retail method determined their inventories in terms of dollar values rather than in terms of specific goods [10] the specificity of the inven-

---

6. Revenue Act of 1938, § 22(d), 52 Stat. 459 (1938).

7. It is demonstrable that this was intended as an ameliorative measure rather than as an aid for accurate ascertainment of the date of purchase of the goods in the closing inventory. For example, in industries where the prime raw material is leather requiring processing, it is a physical impossibility for the raw leather last in to be the first out.

8. Revenue Act of 1939, § 219, 53 Stat. 877 (1939).

9. Revenue Act of 1942, § 118, 56 Stat. 814 (1942).

10. It has been stipulated that due to the multiplicity of items carried by retail department stores and the varying price ranges of those items, it is not practicable to account for the inventories of those stores on an item basis.

toried goods required by Section 22(d), I.R.C. was lacking. Accordingly, in view of the then thinking of the Commissioner and other representatives of the Treasury Department,[11] the Regulations did not make the necessary provisions to permit application of LIFO to users of retail method.[12]

In 1942 Macy and other retailers, as well as representatives of the National Retail Dry Goods Association, held conferences with representatives of the Treasury Department and the Bureau of Internal Revenue for the purpose, among others, of persuading those agencies to abandon their position that users of the retail method did not fall within the class of taxpayers qualified to adopt the elective method. In anticipation that their efforts would meet with success, the Macy management decided to adopt LIFO for the purpose of its Annual Report to its Stockholders for the fiscal year ended January 31, 1942.[13] For the purposes of said Report the opening inventories were arrived at by use of the retail method and the LIFO adjustments in connection with the closing inventories were based upon an index of retail price changes prepared by the National Industrial Conference Board. Plaintiff's regular books of account were kept on the same basis. The taxes shown on its tentative United States Income and Declared Value Excess Profits Tax Returns for such fiscal year which were filed in April 1942 likewise were computed on the LIFO method. The final returns, timely filed in July 1942,[14] were prepared under the LIFO method, but the taxable incomes shown thereon were adjusted to what they would have been had the inventories been valued according to the retail method without the application of LIFO thereto.[15] By so doing Macy did not abandon its resolve to adopt LIFO. Its every act evidences the contrary. Witness: the numerous conferences with highly placed representatives of the Treasury Department and Bureau of Internal Revenue;[16] the action of the Macy Executive Com-

11. "* * * many taxpayers are unable to use the last-in first-out method, particularly taxpayers whose inventory consists of a large number of different products rather than a few homogeneous products." Statement on June 15, 1942 by Randolph E. Paul, tax advisor to the Secretary of the Treasury before the House Ways and Means Committee.

12. "Until after the decision in Hutzler Brothers Co. v. Commissioner, 8 T.C. 14, the Commissioner had issued no regulations with respect to the computation under the 'LIFO' method by a taxpayer using the retail inventory method." Louis Pizitz Dry Goods Co. v. Deal, 5 Cir., 1953, 208 F.2d 724, 727.

13. In said Annual Report Macy advised its stockholders: "Your Corporation has decided to adopt for book purposes the so-called LIFO (last-in first-out) method of inventory valuation. The adoption of this method will serve to reduce in some measure distortion of annual earnings due to appreciation and depreciation in inventory values during a period of extensive changes in price levels. Our previous method of valuing inventories was 'cost or market, whichever is lower' as determined by the retail method. Under our present practice the LIFO method has been used to determine cost. * * * Under existing provisions of the federal tax laws, the LIFO method may not be used by these companies for tax purposes, but it is believed that retroactive legislation will be enacted permitting its use for the year covered by this report."

14. Several extensions of time were obtained in the expectation that in the intervening period either the Commissioner would recede from his position or amendatory legislation would be enacted granting relief to retailers.

15. In the returns as filed the inventories were reported on the LIFO basis. Additions to taxable income attributable to the valuation of inventories on the FIFO method rather than on the LIFO method were made by appropriate adjustments in other sections of the returns.

16. Such conferences were held on February 17, March 19, April 6, 7, 14, June 4 and July 20, 1942. At each of them the Macy representatives urged the Government representatives, *inter alia*, to abandon their opposition to the use of LIFO by users of the retail method.

mittee [17] and of the Macy Board of Directors; [18] and the use of the LIFO method in computing its earnings for the purpose of the prospectus dated May 25, 1942 relating to a $12,000,000. issue of 2½% Sinking Fund Debentures. [19] Furthermore, when the final returns were filed

Macy was ineligible to adopt the elective method of inventory valuation since it had issued a semi-annual report to stockholders during the fiscal year 1942 on the old basis. As already indicated the Regulations were amended in December 1942 removing this disqualification. How-

17. "LIFO—a method of evaluating merchandise inventories (Last-in First-out) was discussed and it was decided to adopt this method for the purpose of determining the operating profit to be reflected in the Stockholders Annual Report for the year 1941. However, with respect to the Federal Income Taxes, it was decided to ask for a sixty-day extension, and if need be for a second sixty-day extension, so that we would be able to study the new tax law before filing a final Federal Income Tax return." Extract from minutes of a meeting of the Executive Committee held on March 20, 1942.

18. "The Treasurer reported that, after full consideration of the matter, the Executive Committee at its meeting on March 20, 1942, had decided to recommend that the so-called 'LIFO' (Last-in First-out) method of valuing inventories of the Corporation and its subsidiaries be adopted for purposes of the Annual Report to stockholders for the fiscal year ended January 31, 1942; and that decision as to the method of valuing inventories for tax purposes for that year be deferred pending further study of the matter in the light of possible amendments to the tax laws relative thereto." Extract from minutes of meeting of Board of Directors held on March 25, 1942.

19. Note (D) to the Consolidated Profit and Loss Statement contained in said Prospectus in part states: "Under the present federal tax law and regulations issued thereunder, a taxpayer may use the Lifo method of inventory to determine taxable income if such taxpayer has used no other inventory method for certain purposes, including reports to stockholders, during the year for which the Lifo method is to be adopted. As the Corporation has issued a semi-annual report to stockholders for the six months ended August 2, 1941 on the old basis, it is prevented from using the Lifo method in the determination of taxable income for the year ended January 31, 1942. However, on March 4, 1942 Mr. Randolph Paul, Tax Advisor of the Secretary of the Treasury, in testifying before the Ways and Means Committee of the House of Representatives, stated that 'as the in-

terim report requirement serves no real purpose and operates to discriminate unfairly between taxpayers who follow the practice of issuing interim reports and those who do not, it is suggested that the requirement be eliminated, and that the elimination be made retroactive to 1941.'

"Even if this provision relating to semi-annual reports is eliminated retroactively, two further factors must be considered in connection with the adoption of the Lifo method for tax purposes, as follows: (1) It is not clear whether the present tax law permitting the use of the Lifo method of inventory requires specific identification of goods in inventory and, if so, whether retailers carrying a large number of varying types of merchandise could meet that requirement. (2) Under the present law the adoption of the Lifo method would limit these companies to the use of 'cost' and would deprive them of the right to use 'cost or market, whichever lower' which they have used for a long period of years.

"Convinced that the important test for the application of the Lifo method of inventory is investment in inventory rather than a particular method of bookkeeping, these companies have joined with others in the retailing industry in an effort to obtain retroactive legislation which would clarify the first of the above factors and obviate the second, in the following manner: (1) By specifically providing that, in determining cost, taxpayers with inventories of varying character and quality, impractical to identify, state, or reduce to common physical units, may state such inventories under the Lifo method on the basis of dollar investment adjusted for variations in price levels. (2) By allowing the use of 'cost or market, whichever lower' under the Lifo method, just as it is now allowed under the present retail method of inventory, as the Lifo method is merely another method of determining cost.

"Conferences have been held with representatives of the Treasury Department in an endeavor to obtain their recommendation that Congress enact the desired remedial legislation of a retroactive character. These discussions are continuing."

ever, the amended Regulations again failed to make any provision for adjustment to the LIFO basis of inventories taken on the retail method.

The Commissioner persisted in his position adverse to the views urged upon him by Macy and other retailers until the Tax Court of the United States decided in Hutzler [20] that adaptation of the LIFO theory to inventories maintained in terms of dollars was permissible and proper within the provisions of Section 22(d) of the Internal Revenue Code. Thereafter on March 4, 1948, the Commissioner amended the regulations retroactively to all taxable years beginning after December 31, 1938 ." * * * in order to adapt the retail inventory requirements of the regulations to the elective inventory principle of Section 22(d) of the Internal Revenue Code as enunciated by the Tax Court of the United States in * * * " the Hutzler case. T.D. 5605, 1948—1 C.B. 16, 17. There then appeared for the first time authorized statistical price indices for use by retailers such as Macy in adjusting inventories taken on the retail method to the LIFO method. I.T. 3904, 1948—1 C.B. 18.

After promulgation of the amended regulations, Macy, in October 1948, filed claims for refund [21] of so much of the income tax and declared value excess profits tax it paid for the fiscal year 1942 as resulted from the Commissioner's failure and refusal to make the use of LIFO available to it.[22] Together with each such claim Macy filed an application for the adoption and use of the elective inventory method on the form provided for that purpose by the Treasury Department (Form 970).

Under date of January 15, 1951, Macy addressed a communication to the Commissioner in which rulings were requested to the effect that (i) if its refund claims for fiscal 1942 and subsequent years are finally disallowed, then it made an election to adopt LIFO for the fiscal year ended January 31, 1948 and (ii) the granting of ruling (i) will not jeopardize the claims for refund for the earlier years. Macy received a reply from the Treasury Department dated January 31, 1951, signed "E. I. McLarney, Deputy Commissioner," stating in part that under even date the Internal Revenue Agent in Charge, Upper New York Division, New York, is being advised with respect to the position of the Commissioner "regarding your claims for refund filed upon the above-mentioned basis [use of the LIFO inventory method]. Accordingly, the requested rulings will not be issued at this time." The letter of even date from the Deputy Commissioner to the Internal Revenue Agent in Charge recommended that Macy's right to use LIFO, beginning with the taxable year ended January 31, 1942, be recognized.[23]

20. 1947, 8 T.C. 14.

21. The amended Regulations were, by their terms, made retroactively applicable to all taxable years beginning after December 31, 1938 that were not then barred by the applicable Statute of Limitations contained in Section 322(b) of the Code, 26 U.S.C.A. § 322(b). In October 1948 Macy's fiscal 1942 was an open year.

22. Another set of refund claims were filed by Macy on the ground that it was entitled, in valuing inventories for the fiscal year involved in this suit, to take into account the involuntary liquidation and replacement provision contained in Section 22(d) (6) of the Code. In view of the stipulation of the parties that if the Court finds there was a timely election of LIFO for tax purposes then there has also been a timely election under the involuntary liquidation provisions, the claims based on the latter provisions will not be treated separately.

23. The text of said letter in full is as follows:

"Returned herewith are the files of the above-mentioned taxpayers for the taxable years ended January 31, 1943 to 1948, inclusive, and July 31, 1949, which were previously forwarded to this office at the request of Mr. C. W. Stowe, Assistant Deputy Commissioner. There also is enclosed the file for the taxable year ended January 31, 1941.

"With reference to the taxpayer's claims for refund, based upon the definitive steps taken in 1942 to adopt and use the Lifo inventory method, it is the opin-

There then followed an audit of Macy's tax return for the 1942 fiscal year and a letter from the Internal Revenue Agent in Charge transmitting the audit report of the Revenue Agent. This report allowed Macy to use the LIFO method in computing its income tax and declared value excess profits tax and proposed appropriate overassessments in favor of Macy.[24]

Despite the foregoing action by the Deputy Commissioner, the Internal Revenue Agent in Charge and the Revenue Agent, the Commissioner of Internal Revenue in office in 1954, ruled that Macy had not met the requirements for adoption of the elective method and disallowed the claims for refund.[25] The requirements which Macy failed to meet were not indicated. It appears, however, that the Commissioner's sole reliance is upon the omission to file Form 970 with the 1942 return or prior to March 10, 1943. The issue narrows itself down, therefore, to whether such omission under the circumstances of this case, is fatal.

There is nothing explicitly in the Statute which requires such holding. Congress did not fix the time for filing the notice of election to adopt LIFO as it did with respect to the notice of election to apply the involuntary liquidation and replacement of inventory provisions of the same statute. See Section 22(d) (6) (A). It authorized the Commissioner to prescribe the time and manner for filing an application to use the LIFO method, Section 22(d) (2) (A), as well as the qualifications for the change to, and use of that method, Section 22(d) (3).

Pursuant to the authority thus conferred, the Commissioner—in December 1939—issued Regulations 103, Sections 19.22(d)–1 to 19.22(d)–6 inclusive. Within a relatively short time after these regulations were promulgated the Commissioner asserted his view, later acknowledged to be erroneous, that the elective method was not available to users of the retail method of inventory valuation.[26] He therefore did not issue any regulations relating to adjustment of inventories theretofore taken on the retail method to a LIFO basis, either by use of a statistical price index or otherwise. This much is not denied.

Pointing to subdivision 3 of section 19.22(d) of the Regulations, as amended

---

ion of this office that the taxpayer's failure to report taxable income on the basis of Lifo inventory values as reflected on its books was due to the Bureau's position of nonrecognition of the right to so report for Federal income tax purposes. Accordingly, the provisions of F.P.M. No. 448 are considered inapplicable to this case, and it is recommended that the taxpayer's right to use Lifo, beginning with the taxable year ended January 31, 1942, be recognized."

24. The Preliminary Statement to the Revenue Agent's Report recites that "[t]he net overassessment is due to valuing of inventories on the elective inventory basis and replacement of goods involuntarily liquidated".

25. In view of the absence of newly discovered facts, fraud or mistake or error of law Macy argues that the present Commissioner did not have the power to reverse his predecessor's determination. Citing cases: H. S. D. Co. v. Kavanagh, 6 Cir., 1951, 191 F.2d 831; Woodworth v. Kales, 6 Cir., 1928, 26 F.2d 178; Penrose v. Skinner, D.C.Col.1923, 298 F. 335.

The basis on which this decision rests, however, renders consideration of this point unnecessary.

26. In Mim. 6244, 1928–1 C.B. 21 (March 9, 1948), the Commissioner stated in part:

"1. Section 22(d) (1) of the Internal Revenue Code provides an elective method for inventorying goods, commonly referred to as the last-in, first-out, or LIFO, inventory method. Section 22(d) (2) (A) of the Code provides that the elective method shall be applied only with respect to the goods specified by the taxpayer in an application filed with the Commissioner. The Commissioner's regulations with respect to the elective inventory method have heretofore made no provision for retailers to group such goods into classes. The Bureau has held that the use of the elective inventory method was not available to taxpayer whose inventory records are kept on the basis of the retail inventory method permitted under Section 29.22(d)–8 of Regulations 111 and Section 19.22(c)–8 of Regulations 103."

by Treasury Decision 5199, 1942–2 C.B. 81, approved December 10, 1942,* the Commissioner argues that notwithstanding his refusal to issue any regulation appropriate to accomplish the general purpose of applying the LIFO method to retail merchants and his inflexible position that the elective method was not available to them, he did provide for the manner and time within which they should file a statement of election to use such method. Consequently, the Commissioner concludes, Macy's omission to file Form 970 within the time fixed in that subdivision effectively bars its right to recover in this suit.

Read *in vacuo* and isolated from the other subdivisions of section 19.22(d), subdivision 3 is susceptible of the use to which the Commissioner would make of it here. Viewed in its entirety,[27] however, and against the background of the Commissioner's position that users of the retail method did not qualify under subdivision 2 to adopt the elective method, such use does violence to and is out of harmony with the intendment of section 19.22(d). Unless subdivision 3 modifies subdivision 2 or supplies the void in the regulations pointed up in Hutzler, and the Commissioner does not so argue, subdivision 3 read together with subdivision 2 fixes the time and manner of filing the statement of election to use LIFO by taxpayers qualified under the Regulations to make that election. To construe subdivision 3 in the manner contended for by the Commissioner is, in effect, to ascribe to him a purpose to require a taxpayer to indulge in the idle and wasteful ceremony of filing a statement of an election the existence of which he steadfastly refused to recognize. It would be rationally offensive to make provision for the time and manner of the filing of a statement of election by one in whom, it is asserted, the right to make an election does not reside, and to whom the right to make the election is denied. The Regulations are to be interpreted in the light of the position the Commissioner openly maintained and not on the basis of the unwarranted assumption that he was attempting to arrogate to himself, in the guise of interpretative regulations, the power to vitiate the statute. It is no answer that the statute was ultimately construed as granting to taxpayers generally the right to elect to use LIFO; for the regulations are to be construed for the purposes of this case as of March 10, 1943, unaided by wisdom acquired after the decision in Hutzler. Thus, it is inescapable that the purview of the original LIFO regulations did not embrace users of the retail method, not only in subdivision 2 thereof, but in subdivision 3 as well.

The failure of the Commissioner to prescribe in his regulations the time and manner of making the elections by taxpayers to whom the elective method was not available under the Regulations until after Macy's tax returns for fiscal 1942 had been filed, cannot operate to deprive Macy of the election available to it by statute. Cf. J. W. & A. P. Howard Co., 1929, 15 B.T.A. 1096; Peck & Hills Fur-

* The pertinent part of this subdivision reads as follows: "Time and manner of making election.—The elective method may be adopted and used if the taxpayer files with his return for the taxable year as of the close of which the method is first to be used (or * * *) in triplicate on Form 970 (revised), and pursuant to the instructions prescribed thereon and to the requirements of this section, a statement of his election to use such method * * *"

27. Single provisions and single sentences are not to be selected and construed by themselves, but the whole must be studied together. See Koppers Connecticut Coke Co. v. James McWilliams Blue Line, D.C.E.D.N.Y.1936, 18 F.Supp. 992, affirmed 2 Cir., 89 F.2d 865, certiorari denied 302 U.S. 706, 58 S.Ct. 25, 82 L.Ed. 545; see also, Glenn v. United States, D.C.S.D.Cal.1955, 129 F.Supp. 914, 919; Adler v. Northern Hotel, 7 Cir., 1949, 175 F.2d 619, 621; Dwight & Lloyd Sintering Co. v. American Ore Rec. Co., 2 Cir., 1920, 263 F. 315, certiorari denied, 252 U.S. 582, 40 S.Ct. 393, 64 L.Ed. 727; Pollard v. Bailey, 1874, 20 Wall. 520, 525–526, 22 L.Ed. 376; United States v. Boisdore's Heirs, 1850, 8 How. 113, 122, 12 L.Ed. 1009.

niture Co., 1929, 16 B.T.A. 1008. Within a reasonable time after issuance of the amended regulations adapting the retail inventory requirements of the regulations to the elective inventory principle of section 22(d) of the Code as enunciated in Hutzler, Macy filed the appropriate statement of its election to adopt LIFO and had performed every act on its part to be performed to qualify for use of the elective method in computing its tax liabilities for fiscal 1942.

Kaufmann & Baer Co. v. United States, 1956, 137 F.Supp. 725, 133 Ct.Cl. 510, certiorari denied 352 U.S. 835, 77 S.Ct. 54, 1 L.Ed.2d 54, is urged as authority to the contrary. In that case plaintiff filed Form 970 three weeks after the March 10, 1943 date set out in § 19.22(d)–3. Within a month thereafter it wrote to the Commissioner with reference to the notice of election and the refund claim predicated thereon, stating in part:

> "Accordingly, we wish to advise you that we desire to withdraw this claim for refund and also to withdraw, or cancel, our application for a change in our inventory method."

The Commissioner in his reply advised that the case had been forwarded to the Agent in Charge and that it would be further advised by that official. The claim was thereafter disallowed, although it "was not really considered in fact," 137 F.Supp. at page 728, apparently because it had been withdrawn. In the subsequent suit for recovery of the claimed refund the defendant contended that the Court lacked jurisdiction since plaintiff had withdrawn its election and claim for refund. To this plaintiff countered "that the attempted withdrawal of its claim for refund was conditioned on the Commissioner's allowance of the withdrawal or cancellation of its application to change its inventory method to LIFO, and that the Commissioner did not write it approving its withdrawal." 137 F. Supp. at page 729. No reason suggests itself to the Court why, under the circumstances in that case, disallowance of plaintiff's claim without consideration upon the merits, and the interposition of

the defense that the notice of election and claim for refund had been withdrawn are less than approval by the Commissioner of withdrawal of both the claim and notice of election. Surely if the sole ground of the decision were derived from the Commissioner's aforementioned contentions, he would not have been heard to, and neither can he now validly contend that he had not acquiesced in such withdrawal. The claim for refund having been withdrawn, whether the notice of election had or had not been duly filed could not affect the result. Upon this view, the observations in Kaufmann & Baer on the timeliness of the filing of the notice of election do not, with due deference, rise above the level of *obiter dicta*.

■ The defendant's brief argues that administrative regulations in harmony with the statute under which they were issued are to be upheld. At issue is not whether subdivision 3 is to be upheld but rather whether it is to be expanded to encompass a class of taxpayers clearly not envisaged when it was promulgated. That the Commissioner could not by his regulations alter or amend the statute, Morrill v. Jones, 1882, 106 U.S. 466, 1 S. Ct. 423, 27 L.Ed. 267, and that he erred in his interpretation of the scope and applicability of the statute to users of the retail method cannot be availed of to read into any part of his regulations a meaning which would include within the words "the taxpayer", as used in subdivision 3, a class consistently proclaimed by him to be excluded from the identical words in the immediately preceding subdivision of the same section.

Extended argument in defendant's brief relating to Macy's intent in 1942 to adopt statutory LIFO ends with the statement that it is not material. The affidavit in support of defendant's cross motion for summary judgment, via incorporation by reference, consists wholly of a letter dated May 18, 1954 from the Acting Commissioner of Internal Revenue to the District Director Internal Revenue Upper Manhattan, N. Y., commenting at length upon the same "immaterial" matter. Exploring for Macy's intent

would be useful if discovery that its failure to file Form 970 "was due to the Bureau's position of non-recognition of the right" [28] to use the LIFO method for Federal Income Tax purposes would prompt the Commissioner to reverse his reversal of his predecessor. No such suggestion is contained in the briefs; and, indeed, the position taken by the Commissioner in Kaufmann & Baer Co. v. United States, supra, would point to the contrary. Absent an applicable regulation fixing the time and manner for filing a statement of election no inferences may be drawn from the non-filing. Neither may an unfavorable inference as to Macy's intent be drawn from its support of the proposal put forth in 1942 by Randolph E. Paul, then tax advisor to the Secretary of the Treasury, which if enacted into law would have afforded "many taxpayers—unable to use the last-in first-out method, particularly taxpayers whose inventory consists of a large number of different products rather than a few homogeneous products",[29] substantially all the advantages of the LIFO method. Macy together with other retailers sought the safeguard against inclusion of book inventory profit in taxable income available to taxpayers who were able to use the LIFO method. Confronted with opposition from all quarters it joined in recommendations for remedial legislation. That those recommendations, made before acquiescence by the Commissioner in the determination that his construction of the statute was erroneous, differed in part from the then regulations and the statute as ultimately construed does not warrant the conclusion that given the election between statutory LIFO without the recommended change or no LIFO at all the choice would have been the latter. Rejection cannot be inferred from the failure to choose between non-existent alternatives. Cf. Pictorial Review Co. v. Helvering, 1934, 63 App.D.C. 21, 68 F.2d 766; Belknap v. United States, D.C.W.D.Kentucky 1944, 55 F.Supp. 90.

For its failure to join with Hutzler and others in contesting the validity of the Commissioner's interpretation of the statute, the defendant would visit upon Macy a denial of the Congressional grant of the right to adopt the elective method for all years antecedent to the decision in that case. The pervasive theme of the defendant's brief is that an " * * * erroneous interpretation of the act by the Treasury Department [does] not estop the government from asserting the tax, even though the taxpayer may have been misled by such interpretation." citing Langstaff v. Lucas, D.C.W.D.Kentucky 1925, 9 F.2d 691; affirmed 6 Cir., 1926, 13 F.2d 1022, certiorari denied 1926, 273 U.S. 721, 47 S.Ct. 111, 71 L.Ed. 858. This position mistakenly equates the consequences flowing from a taxpayer's reliance upon the Commissioner's erroneous construction of the law with those resulting from the Commissioner's omission or neglect to issue a regulation, i. e., his failure to issue an applicable regulation fixing the time for filing the statement of election by a taxpayer employing the retail method. The Commissioner's mistake was twofold: first, as reflected in sec. 19.22(d)–2 in not recognizing the right of users of the retail method to adopt LIFO; and second, in not prescribing the time and manner for such taxpayers to file a statement of election to use LIFO. With respect to his first mistake the Commissioner, recognizing that "[e]ven tax administration does not as a matter of principle preclude considerations of fairness", Angelus Milling Co. v. Commissioner, 1944, 325 U.S. 293, 297, 65 S.Ct. 1162, 1165, 89 L.Ed. 1619, amended the LIFO regulations retroactively to all taxable years beginning after December 31, 1938. These amended regulations were issued in consonance with the suggestion in Hutzler that "[t]he adoption of appropriate details to accomplish the general purpose of applying the LIFO method to retail merchants could well be the subject of an administrative regulation." 8 T.C. at page 32.

28. See note 23, supra.

29. See note 11, supra.

■ Reference is not made in the amended regulations to sec. 19.22(d)-3. However, whether the amended regulations, despite the lack of express reference to sec. 19.22(d)-3, are to be construed as also amending that sub-section or as leaving it unchanged, the result vis-a-vis Macy is the same. For the Commissioner's error in failing to issue an applicable regulation fixing the time for filing a statement of election, Macy cannot be positioned as if an applicable regulation had been issued and it defaulted in complying therewith. Its non-compliance with an inapplicable regulation cannot be availed of as a time bar. That the Commissioner omitted to issue an applicable regulation because he erroneously interpreted the statute and that Hutzler and others successfully challenged such interpretation does not supply the omission.

The cases cited by the defendant are inapposite, and the effort to analogize them with the case at bar highlights its oversight of the problem posed in this case. In Radiant Glass Co. v. Burnet, 1931, 60 App.D.C. 351, 54 F.2d 718 the facts were these. The taxpayer filed its corporate income tax return for 1922 showing no tax to be due. An audit of the return made in 1926 disclosed a number of errors as a result of which a tax deficiency was assessed. Thereupon, a petition was filed praying that the taxable income and income tax of the taxpayer and an affiliated corporation be treated and computed as a consolidation under the Revenue Act of 1921. For the year 1921 affiliated corporations were required to file consolidated returns, but for the year under review such corporations were permitted to file consolidated or separate returns at their election. In 1921 the Commissioner had ruled that taxpayer and the other corporation were not affiliated in law and, accordingly, should not file a consolidated return. Separate returns for that year were thereupon filed. The relations of the companies remaining the same, separate returns were again filed for 1922. In 1926 the Commissioner reversed his earlier ruling and permitted an amendment of the return for 1921, to wit, the year when a consolidated return was obligatory, but refused to permit an amendment of the return for 1922 when such corporations were entitled to file either separate or consolidated returns at their election. In affirming a denial of the prayer, the court held that (i) when the taxpayer came to make out and file its return for 1922 it was entitled, if affiliated with another corporation, to file either a separate or consolidated return; (ii) the ruling of the Commissioner with respect to the prior year did not prevent or impair the free exercise of that right; and (iii) the right of choice or election to file a separate or consolidated return is exercised by filing the return.

The controlling facts in Safety Electric Products Co., Inc., v. Helvering, 9 Cir., 1934, 70 F.2d 439 are almost identical. The Revenue Act of 1926 permitted affiliated corporations to file a consolidated return or separate returns at their election. In 1926 petitioner was affiliated with two other corporations and was entitled to file a consolidated return for the group if it elected to do so. However, a consolidated return for only two of the companies was filed—the third having filed a separate return because the Treasury Department had objected to the filing by said third company as an affiliate for the preceding year. In 1929 a consolidated return of all three companies for the year 1926 was filed. Relying upon, and quoting at length from Radiant Glass Co. v. Burnet, supra, the court held that the filing of the separate return by the third company was an election, and having made its election or choice it was bound thereby and could not afterwards change.

Lamb v. Smith, 3 Cir., 1950, 183 F.2d 938 presented two issues: whether a family partnership was to be given recognition for tax purposes; and if so, whether the husband and wife were to be permitted to file separate returns for a year in which they had previously filed

a joint return. It was contended that the joint return was filed as a result of the Commissioner's refusal to recognize the wife's interest in the partnership. The first issue was resolved in favor of, and the second adversely to, the taxpayers. The Commissioner's refusal to recognize the partnership, observed the court, did not prevent the taxpayers from filing separate returns, and having freely elected to file a joint return they were bound by their knowledgeable choice.

It is to be observed that in each of the three cases relied on by the government the taxpayer was given a choice by statute to file one sort of return or another and after exercising the election sought to be relieved therefrom. In each instance, too, a claim was asserted that the original choice was influenced by an erroneous determination by the Commissioner. In none of the cases, however, did the error of the Commissioner prevent or impair the free exercise of the statutory option. There was no provision in the statutes involved in those cases for filing a notice of election to use one type of return or another separate and apart from the return itself. The election was exercisable in each instance by filing the return of the taxpayer's choice. In the case at bar on the other hand, the election to adopt LIFO was to be effectuated in part by filing a separate application at such time and in such manner as the Commissioner prescribed. The failure of the Commissioner so to prescribe with respect to users of the retail method prevented and impaired the exercise of the election by Macy. Under these circumstances to deny relief to Macy would be to permit the Commissioner to benefit by his own non-feasance.

The recommendation of the Commissioner in office in 1951 that Macy's "right to use LIFO beginning with the taxable year ended January 31, 1942, be recognized" is just and well-advised.

Accordingly, plaintiff's motion for summary judgment is granted.