KAUFMANN & BAER COMPANY & Gimbel Brothers, Inc.

v.

The UNITED STATES.

No. 47844.

United States Court of Claims.

Jan. 31, 1956.

Harry J. Rudick, New York City, for the plaintiffs. Alexander B. Royce, Mason G. Kassel and Robert E. Friou, New York City, were on the briefs.

John A. Rees, with whom was H. Brian Holland, Asst. Atty. Gen., for the defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

1. Gimbel Brothers, Inc. owned all of the outstanding stock of Kaufmann and Baer Company. On January 31, 1946, Kaufmann and Baer Company was liquidated and its assets were transferred to Gimbel Brothers, Inc.

2. "§ 22 * * * (d) *Method of inventorying goods.*

"(1) A taxpayer may use the following method (whether or not such method has been prescribed under subsection (c) in inventorying goods specified in the application required under paragraph (2):

"(A) Inventory them at cost;

"(B) Treat those remaining on hand at the close of the taxable year as being: First, those included in the opening inventory of the taxable year (in the order of acquisition) to the extent thereof, and second, those acquired in the taxable year; and

"(C) Treat those included in the opening inventory of the taxable year in which such method is first used as having been acquired at the same time and determine their cost by the average cost method.

"(2) The method described in paragraph (1) may be used—

"(A) Only in inventorying goods (required under subsection (c) to be inventoried) specified in an application to use such method filed at such time and in such manner as the Commissioner may prescribe; and

"(B) [As amended by Sec. 118(a) of the Revenue Act of 1942, 56 Stat. 798] Only if the taxpayer establishes to the satisfaction of the Commissioner that the taxpayer has used no procedure other than that specified in subparagraphs (B) and (C) of paragraph (1) in inventorying such goods to ascertain the income, profit, or loss of the first taxable year for which the method described

LITTLETON, Judge.

The plaintiffs,[1] Kaufmann and Baer Company and Gimbel Brothers, Inc., sue to recover an alleged overpayment of taxes for the fiscal year ending January 31, 1942. The question presented is whether Kaufmann and Baer Co. is entitled to have its taxable income for the fiscal year ended January 31, 1942, computed by valuing its opening and closing inventories for that year on the last-in first-out basis (hereinafter referred to as LIFO) provided in § 22(d) of the Internal Revenue Code of 1939, as amended, 26 U.S.C. § 22(d).[2]

in paragraph (1) is to be used, for the purpose of a report or statement covering such taxable year (i) to shareholders, partners, or other proprietors, or to beneficiaries, or (ii) for credit purposes.

"(3) The change to, and the use of, such method shall be in accordance with such regulations as the Commissioner, with the approval of the Secretary, may prescribe as necessary in order that the use of such method may clearly reflect income.

"(4) In determining income for the taxable year preceding the taxable year for which such method is first used, the closing inventory of such preceding year of the goods specified in such application shall be at cost.

"(5) If a taxpayer, having complied with paragraph (2), uses the method described in paragraph (1) for any taxable year, then such method shall be used in all subsequent taxable years unless—

"(A) With the approval of the Commissioner a change to a different method is authorized; or

"(B) [As amended by Sec. 118(b) of the Revenue Act of 1942, supra] The Commissioner determines that the taxpayer has used for any such subsequent taxable year some procedure other than that specified in subparagraph (B) of paragraph (1) in inventorying the goods specified in the application to ascertain the income, profit, or loss of such subsequent taxable year for the purpose of a report or statement covering such taxable year (i) to shareholders, partners, or other proprietors, or beneficiaries, or (ii) for credit purposes; and requires a change to a method different from that prescribed in paragraph (1) beginning with such subsequent taxable year or any taxable year thereafter.

In either of the above cases, the

For purposes of this decision the facts may be summarized as follows:

Kaufmann and Baer Company (hereinafter referred to as plaintiff) kept its books and filed its Federal tax returns on the accrual method of accounting. The plaintiff's tax returns for the fiscal year ended January 31, 1942, (the only year in question), and for the succeeding fiscal years to and including the fiscal year ended January 31, 1948, were filed on the retail method of inventory based on the first-in first-out method of valuation (hereinafter referred to as FIFO). Plaintiff's tax returns for the fiscal year ending January 31, 1942, were filed on July 13, 1942, and the taxes shown to be due thereon were paid.

Until October 21, 1942, the date of the approval of the Revenue Act of 1942, 56 Stat. 798, section 22(d) (2) (B) and Treasury Regulations 101, as amended by T.D. 4959 (1940–1 C.B. 22), approved December 28, 1939, limited the use of LIFO to taxpayers who had used no other procedure other than LIFO in inventorying goods for any period during the first taxable year for which the LIFO method was to be used in reporting to shareholders or for credit purposes. The plaintiff and Gimbel Brothers were ineligible to use LIFO at the time they filed their returns for the fiscal year ending January 31, 1942, because Gimbel Brothers had issued an interim report to its stockholders for the period February 1, 1941 to July 31, 1941, which was prepared on the basis of FIFO.

On April 9, 1942, the directors of Gimbel Brothers decided that at that time it would be in the best interests of the company and its subsidiaries to adopt the LIFO method and they then approved the annual report prepared on the LIFO basis for release to the stockholders. An interim report for the fiscal year ending January 31, 1943, was also issued on the LIFO basis.

Section 118 of the Revenue Act of 1942 removed the prohibition against the adoption of LIFO for a year during which interim reports on a non-LIFO basis had been issued. This change was retroactive to taxable years beginning after December 31, 1938. It did require that annual reports be made on a LIFO basis. The Revenue Act of 1942 was approved on October 21, 1942. Treasury Regulations 103, applicable at that time, were amended to conform to §§ 118 and 119 of that act in T.D. 5199, 1942–2 C.B. 81, approved December 10, 1942, and was published in the Federal Register on December 12, 1942, pp. 10366–10368. As amended by 2 T.D. 5199, § 19.22(d)–3 of Treasury Regulations 103 read in part as follows:

*"Time and Manner of Making Election.*—The elective inventory method [LIFO] may be adopted and used only if the taxpayer files with his return for the taxable year as of the close of which the method is first to be used (or, if such return is filed prior to March 10, 1943, the ninetieth day after the approval of Treasury Decision 5199, then at any time prior to such date), in triplicate on Form 970 (revised), and pursuant to the instructions printed thereon and to the requirements of this section, a statement of his election to use such inventory method. * * *"

At a meeting of Gimbel's executives and its accounting firm, held in the latter part of December 1942, it was decided at that time that Gimbel and its subsidiaries should file refund claims for the fiscal year ended January 31, 1942, and elections on Form 970 to adopt LIFO for the fiscal year ended January 31, 1942. The accounting firm was instructed to prepare the refund claims and election forms. Form 970 (revised) became available around the end of Feb-

change to, and the use of, the different method shall be in accordance with such regulations as the Commissioner, with the approval of the Secretary, may pre-

scribe as necessary in order that the use of such method may clearly reflect income. * * *"

ruary 1943. The expiration date for the filing of this election under the above regulation was March 10, 1943. Application for the change could have been made in time by the accounting firm but it did not finish the preparation of this form by that date. After preparation of the form it was submitted to plaintiff, and plaintiff filed a claim for refund and the election on Form 970 (revised) on March 31, 1943.

During this period and until the Tax Court decided the case of Hutzler Brothers Co. v. Commissioner, 8 T.C. 14, on January 14, 1947, the Commissioner of Internal Revenue had taken the position that LIFO was available only to taxpayers who applied the method to the cost of specific inventory items, and that LIFO was not available to taxpayers who applied the method to the total inventory of each department of a department store. The plaintiff employed the latter method, stating its inventories in dollar values rather than in cost of specific items.

The board of directors of Gimbel Brothers decided at a meeting held on April 20, 1943, to issue the annual report on the FIFO basis for fiscal year ended January 31, 1943. The decision to abandon LIFO and revert to FIFO was based on the position of the Commissioner that retailers such as plaintiff might not adopt LIFO, and the disadvantages of keeping books on LIFO and filing tax returns on FIFO. Plaintiff, of course, did not elect to contest the position which the Commissioner had taken. It was also decided at that meeting that Gimbel and its subsidiaries would request permission to withdraw their elections to adopt and use LIFO for its inventory for the fiscal year ended January 31, 1942, and their claims for refund, predicated on the election which had been filed late. The annual report to the stockholders notifying them of the decision to abandon LIFO was issued on April 24, 1943. On April 28, 1943, plaintiff wrote to the collector, referred to their claim for refund and election, and stated:

"This is to advise you that we desire to withdraw this claim for refund and our application for change in inventory method."

The collector informed plaintiff that the claim for refund and election had been sent to the Commissioner in Washington and that plaintiff should advise that office of its intention. The plaintiff wrote the Commissioner on May 5, 1943, referred to the refund claim and election and stated in part:

"Accordingly, we wish to advise you that we desire to withdraw this claim for refund and also to withdraw, or cancel, our application for a change in our inventory method."

The deputy commissioner replied on May 27, 1943, stating that the case had been forwarded to the Agent in Charge in Pittsburgh and that "you will be further advised by that official relative to the matter." This agent made an investigation and found an overpayment separate and apart from the inventory question. He made no change in the inventory method used. He advised plaintiff to file another refund claim for this amount. The plaintiff filed another refund claim on March 23, 1945, and that overpayment was refunded or credited to plaintiff. On August 16, 1945, the deputy commissioner wrote plaintiff, referred to its refund claim for $106,287.97, which was its refund claim based on a change to LIFO, and stated that "this notice of disallowance of your claim or claims to the extent not previously allowed, is hereby given by registered mail." This was simply a pro forma reference, and the claim was not really considered in fact. The plaintiffs filed their petition in this court on August 11, 1947, within two years after August 16, 1945.

The Tax Court held in the Hutzler Brothers case, supra, January 14, 1947, that a retailer using the retail method and valuing its inventory by department dollar totals at retail and at cost based upon price indices and not by specific items could use LIFO. The Commissioner changed his regulations accordingly and settled certain cases on that

basis. The deputy commissioner notified the revenue agent in New York that the case at bar might be susceptible of administrative settlement and asked him to look into the matter. However, on June 6, 1953, plaintiff was notified that its claim could not be allowed because of its failure to file a timely election and further because its election had been expressly withdrawn. The plaintiff brought this action on the basis that its election to use LIFO was made within a reasonable time and that the attempted withdrawal of the election was ineffective since such election was irrevocable.

The defendant contends at the outset that this court lacks jurisdiction in this case because plaintiff not only withdrew its election but also withdrew its claim for refund. In answer to this plaintiff claims that the attempted withdrawal of its claim for refund was conditioned on the Commissioner's allowance of the withdrawal or cancellation of its application to change its inventory method to LIFO, and that the Commissioner did not write it approving its withdrawal. Although plaintiff's letters of attempted withdrawal do not specifically condition the withdrawal of the claim for refund on the Commissioner's allowance of the withdrawal of its application to change to LIFO, it is obvious that plaintiff intended to withdraw both its election and claim for refund and this was so understood by the Commissioner.

If the plaintiff could get over the hurdle of not having filed a timely election to change to LIFO, the question on the merits would be whether the filing of plaintiff's election to change to LIFO was irrevocable and therefore could not be changed without the Commissioner's written consent.

■ We find, however, that plaintiff failed to file a timely election to change to LIFO for the fiscal year ended January 31, 1942. The plaintiff had 90 days within which to file an election under the regulations as amended by T.D. 5199, which are hereinbefore set out. The plaintiff contends that it did not believe that the 90-day period applied to it because of the Commissioner's position that retailers who inventoried their goods on dollar values were not entitled to use LIFO.

The Commissioner was authorized by § 22(d) to promulgate regulations regarding the application to adopt LIFO and the time and manner in which the application was to be filed. The Commissioner issued the regulations setting forth the time and manner for the filing of the application. Plaintiff had a reputable accounting firm advising it. When the statute and valid regulations give a taxpayer a right it must protect and prosecute that right within the required period, or such extension thereof as may be secured, or the right is lost. Time limitations within which to make elections would be meaningless if the law were otherwise.

■ The plaintiff also contends that if the 90-day period were applicable to it then the regulation was invalid because it failed to allow a reasonable time within which to file the election. In support of this argument it says that the forms upon which it was to make the election were not made available until the latter part of February 1943, when the expiration date for filing was March 10, 1943, and that it was unreasonable to require the complex computation which was necessary to be done in that short a period. Other taxpayers did it. The plaintiff became entitled to adopt the LIFO method when the 1942 Revenue Act of October 21, 1942, eliminated the interim report prohibition. This was three months before the end of the taxable year in question. The plaintiff's executives first decided in the latter part of December 1942 to adopt LIFO. If the 90 days were insufficient for plaintiff, it could and should have requested an extension of time, which is, in most cases at least, willingly granted. Many of the retailers protected themselves as did the Hutzler Brothers.

We are unable and unwilling to find under the facts and circumstances that

are in the record in this case that the 90-day period was insufficient and that it was an unreasonable period within which to file an election to change to LIFO. Had plaintiff been aware of its rights and acted with diligence it could easily have filed its election within the 90-day period.

■ The plaintiff contends that the Commissioner has, by his actions over a 10-year period, waived any technical defects in plaintiff's LIFO election and further that the Commissioner is estopped from denying that plaintiff's election was not valid. It is true that the Commissioner did not specifically object to the timeliness of the election until in June 1953. However, objection was unnecessary since plaintiff had stated it did not desire to pursue it. The fact that many cases were settled by the Commissioner even though there were technical defects in the applications to adopt LIFO does not help plaintiff. The plaintiff relies on United States v. Kales, 314 U.S. 186, 197, 62 S.Ct. 214, 86 L.Ed. 132, in support of its proposition that the Commissioner's action waived the technical requirements with respect to the election. That case involved a refund claim and the Court held that a timely filed informal claim for refund, which was subsequently remedied with a formal claim, sufficed to stop the running of the statute of limitations and although it may have been deficient in specificity, it was sufficient to advise the Commissioner of the nature of the claim. The Court further stated that the lack of specificity was waived by the Commissioner's consistent treatment of the claim as a sufficient claim for refund. The Kales case lends little support to plaintiff because in that case the informal claim was timely and matters of particularity or specificity were considered waived. Had the plaintiff here filed a timely election which lacked formal or technical requirements and had pressed it, that rule might be applicable.

Moreover, we do not believe that the Commissioner's action with respect to plaintiff's claim for refund and the LIFO election amounted to a waiver or acceptance of anything. The Commissioner's interpretation of the applicable sections to mean that retailers using dollar totals rather than specific items could not use the LIFO method was erroneous. If the plaintiff wanted to use the LIFO method it should have filed its returns on that basis and have made a timely election to use the method, as did other taxpayers. The Commissioner's failure to act on the election to use LIFO did not prejudice plaintiff. It could have sought action by the Commissioner or from the courts if it desired. Instead of pursuing its legal remedies plaintiff sought to withdraw its claim for refund and its election. Notwithstanding the fact that plaintiff now contends that it was bound by its election to use LIFO, it consistently filed its tax returns on the FIFO basis and reverted to the FIFO basis in its reports to its stockholders. The record is devoid of any evidence to show that the Commissioner did anything to prejudice plaintiff's rights other than to erroneously interpret § 22(d).

Although the Commissioner's action in some cases has amounted to a waiver or estoppel we do not believe a consideration of all the facts and circumstances of this case warrants holding that the Commissioner has waived or is estopped from asserting the defense of the untimely filing of plaintiff's election to change to LIFO. Accordingly, we hold that plaintiff's election to adopt the LIFO method was ineffective because it was not timely filed. The petition of plaintiffs is therefore dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.