R. H. MACY & CO., Inc., L. Bamberger & Co., Davison-Paxon Co., and The La Salle & Koch Company, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 189, Docket 24710.

United States Court of Appeals Second Circuit.

Argued March 10, 1958.

Decided May 12, 1958.

Rehearing Denied June 16, 1958.

Morton S. Robson, Asst. U. S. Atty., S. D. N. Y., New York City (Paul W. Williams, U. S. Atty., and Daniel F. McMahon, Asst. U. S. Atty., New York City, on the brief), for defendant-appellant.

Roswell Magill, of Cravath, Swaine & Moore, New York City (Albert Rosenblum, Charles T. Stewart, Nathan Dreizen, George S. Parlin, Jr., George G. Tyler, and Edward Q. Carr, Jr., New York City, on the brief), for plaintiffs-appellees.

Before CLARK, Chief Judge, HINCKS, Circuit Judge, and BRENNAN, District Judge.

CLARK, Chief Judge.

The defendant appeals from a summary judgment in favor of the taxpayer, Macy,[1] allowing it to recover income and excess profits taxes for the fiscal year 1942 and denying defendant's cross-motion for summary judgment. D.C.S.D. N.Y., 148 F.Supp. 377. The facts have been stipulated. At issue is whether Macy, in 1948, may recompute taxable income for the fiscal year 1942, using the "last-in, first-out" (LIFO) method of inventory, when it had failed to file an election to use that method within the time prescribed by the Commissioner of Internal Revenue.

In its operation of retail department stores Macy values inventories according to the retail method of inventory valuation which was, and still is, acceptable to the Treasury Department. Under this method, inventory records are maintained by each department in the store in terms of dollars, rather than in terms of specific articles of merchandise.[2] Under any method of inventory, "costing" the closing inventory is a necessary step in the calculation of taxable income. FIFO and LIFO are alternative accounting methods for arriving at this cost. LIFO assumes that the last articles purchased during the year were the first ones sold, so that articles left in the inventory at the end of the year were the first ones purchased. FIFO (first-in, first-out) assumes the converse, that the earliest article purchased was the first one sold, so that articles left in the inventory at the end of the year were the last ones purchased. Obviously neither FIFO nor LIFO corresponds with actual fact, although the FIFO assumption seems more logical in the normal course of business operations. In a period of stable prices the application of either theory renders the same result. But during an inflationary period, LIFO is distinctly advantageous to the taxpayer, for, in effect, he is not required to include as profit increases in value of inventory. This illustrates the real purpose of the methods— to reflect accurately what normally is considered as profit during inflationary and deflationary periods in the economy.

1. R. II. Macy & Co., Inc., was the sole stockholder of L. Bamberger & Co., Davison-Paxon Co., and The La Salle & Koch Company. In 1948 these subsidiaries were liquidated, and their assets, including the tax refund claims here involved, were distributed to Macy, which hereinafter is treated as the sole plaintiff.

2. For a detailed exposition of the "retail method," see Hutzler Bros. Co. v. C. I. R., 8 T.C. 14, 15, 16.

Prior to 1939 only a limited class of taxpayers were permitted to use the LIFO method in calculating their federal taxes. The Internal Revenue Code of 1939, § 22(d), however, provided for its use by any taxpayer who complied with the requirements of the section. Two such requirements are at issue here: One, contained in § 22(d) (2) (A), required the taxpayer to make a binding application to use the LIFO method to be filed in a manner and at a time prescribed by the Commissioner. The other, contained in § 22(d) (3), required that the use of LIFO be in accordance with regulations which the Commissioner could prescribe as necessary so that the use of the method would clearly reflect income. The Commissioner implemented the statute with Regulations 103, § 19.22 (d). This required that the taxpayer file a statement of election to use LIFO with his return for the taxable year in which the method was first to be used, thus following the direction of § 22(d) (2) (A). And it further elaborated on other portions of the statute by spelling out with greater specificity the statutory requirements incident to the use of LIFO.

Macy's directors decided to adopt the LIFO method and took many of the necessary steps to implement their decision. Its executive committee voted to adopt the method for the purpose of determining operating profit to be shown in its annual report, and its board of directors followed suit soon thereafter. In addition Macy kept its regular books of account for the fiscal year 1942 on a LIFO basis, and in a prospectus relating to an issue of debentures it used LIFO to compute earnings for that fiscal year. Thus it seems apparent that Macy seriously was considering a change over to LIFO in its return for the fiscal year 1942 which was filed in July of that year.

Two factors, however, complicated the effectuating of this decision. First, Macy had issued during the fiscal year 1942 an interim report which was not based on LIFO. As the statute existed prior to its amendment in October 1942, this barred Macy from using LIFO for that fiscal year. Second, as stipulated by the parties, the Commissioner and other representatives of the Treasury Department took the position that LIFO was not available to users of the retail method of inventory valuation, since such taxpayers determined their inventories in terms of dollar values, rather than in terms of specific goods. Evidently the Commissioner interpreted the language of the statute which permitted the use of LIFO in inventorying "goods" to preclude its use by taxpayers who inventoried in terms of dollars. The argument is based on the fact that FIFO and LIFO deal in terms of specific articles of merchandise and thus appear to be inapposite to the retail method of inventory valuation, which deals in terms of dollar values. But this seeming inappropriateness is superficial when one considers the purpose of the theories—accurate reflection of profit—and essentially it is simple to apply the FIFO or LIFO assumptions to retail-method taxpayers. In the case of LIFO this consists roughly of adjusting the value of the closing inventory by price indices which reflect increases in value during the year.[3] These difficulties did not completely discourage Macy, however, for in its return for that fiscal year, which was timely filed on July 15, 1942, inventories were reported on the basis of LIFO, using retail price indices prepared by the National Industrial Conference Board. Macy adjusted the income and excess profits taxes due, however, so as to reflect the retail method of inventory valuation, without the application of LIFO, and paid its taxes on this basis. Thus Macy filed a "dual" return which reflected taxable income with and without the use of LIFO, but actually paid its taxes without using the theory.

The Internal Revenue Code of 1939 was amended the following October to

3. A method for making the adjustments once the proper indices are determined is illustrated in Hutzler Bros. Co. v. C. I. R., 8 T.C. 14. See also Basse v. C. I. R., 10 T.C. 328.

remove the first difficulty. The regulations were amended in December to allow taxpayers previously barred from using LIFO because of their publication of inconsistent interim reports to elect LIFO for the barred years by filing Treasury Department Form 970 prior to March 10, 1943. Macy was now in a position to effectuate its decision to adopt the LIFO method for the fiscal year 1942. But March 10, 1943, came and went without Macy filing the required notice of election, allegedly because of the Commissioner's opposition, which at that time had never been the subject of a formal ruling or decision.

Some seventy other retailers refused to acquiesce in the Commissioner's informal position, however, and they filed statements of election to use the LIFO method. In the absence of published price indices to adjust closing inventories, so as to make possible the computation of that portion of profit which was due to the year's price rise, these retailers used indices prepared by the National Industrial Conference Board, as had Macy in its original return for the fiscal year 1942. The Commissioner then took a formal stand disallowing the use of LIFO by "retail method" taxpayers. The issue came to a head in 1947 when the Tax Court in Hutzler Bros. Co. v. C. I. R., 8 T.C. 14, 28, decided in favor of the taxpayer and held that the statute contemplated the use of LIFO by taxpayers who valued inventory according to the retail method. The court interpreted the word "goods" as used in §§ 22(d) (1) and (2) broadly as merchandise "describing in the generic sense the stock in trade of a typical department store." The court also held that, regardless of the Commissioner's position, his "regulations are as consistent with petitioner's position as they are with that of respondent." Ibid. This statement obviously was directed at § 19.22(d)–2 of the regulation which referred to "goods" to be inventoried. The court suggested, however, that the Commissioner issue new regulations consistent with its opinion. The Commissioner acquiesced in the decision and, possibly because of the court's suggestion, issued amendments to the regulations. The major change by way of amendment was to add information concerning acceptable price indices. In addition the amendments removed any question as to the applicability of § 19.22 (d)–2 to retail method taxpayers. The amendments were retroactive to all taxable years beginning after December 31, 1938. Shortly thereafter the Commissioner issued Mim. 6244, 1948–1 C.B. 21, stating in detail proper price indices and providing that retailers who previously had filed returns on the basis of LIFO using unacceptable indices could thereafter file amended returns for all "open" years based on indices acceptable to the Commissioner.

In September or October 1948, Macy filed notices of election to use LIFO for the fiscal year 1942, together with claims for refund of taxes paid for that year. In 1948 this year was still an "open" year for purposes of claiming refunds. In early 1951 Macy requested a ruling on its election and claim. Eventually, in 1954, the Commissioner ruled adversely to it on the ground that it had failed to file a notice of election to use LIFO for the fiscal year 1942 on or before March 10, 1943, as required by the regulation.

Macy contends that it was not required to file an election on that date, because the whole regulation which the Commissioner issued to govern the use of LIFO was inapplicable to it, a taxpayer using the retail method of inventory valuation. Both Macy and the government agree that the statutory right to elect LIFO was not absolute, but was conditioned upon compliance with appropriate regulations to be issued by the Commissioner pursuant to §§ 22(d) (2) (A) and (3). There is little argument with respect to the regulation designed to implement § 22(d) (2) (A), for it clearly sets forth the time and manner of filing applications to use LIFO. But Macy points to § 22(d) (3) of the Act, which provides that "[t]he change to, and the use of, [the LIFO] method shall be in accordance with such regulations as the Com-

missioner \* \* \* may prescribe as necessary in order that the use of such method may clearly reflect income." It then contends that § 19.22(d)–2 of the regulation, which purportedly was issued to implement § 22(d) (3), did not permit the inventorying of goods by departments or classes or provide price indices to convert the retail method inventory figure to a LIFO figure, and thus prohibited LIFO to taxpayers who used the retail method of inventory valuation. Therefore it claims that as the regulations relating to the change to, and the use of, LIFO were not applicable to it, the regulations relating to time and manner of election were likewise inapplicable until 1948 when they were amended.

Macy's conclusion does not withstand a careful analysis of the statute and the regulations. First, Regulations 103, § 19.22(d)–1 specifically provided that "[a]ny taxpayer permitted or required to take inventories pursuant to the provisions of Section 22(c) and pursuant to the provisions of Sections 19.22(c)–1 to 19.22(c)–8, inclusive, may elect with respect to those goods specified in his application and properly subject to inventory to compute his opening and closing inventories in accordance with the method provided by Section 22(d) [the LIFO method]." Section 19.22(c)–8 of the regulations, referred to above, permitted retail merchants to employ the retail method. Thus the LIFO regulations specifically stated that taxpayers like Macy could use the LIFO method to compute opening and closing inventories.

Second, at least two other courts have held that the LIFO regulations were applicable to "retail method" taxpayers. In Hutzler Bros. Co. v. C. I. R., supra, 8 T.C. 14, the Commissioner argued that his interpretive regulations showed the statute did not permit use of LIFO by a taxpayer like Macy and in fact barred such use. But the Tax Court rejected this argument and held that the regulations were "ambiguous and largely irrelevant administrative interpretations" of the statute and that they supported the taxpayer's contentions as much as those of the Commissioner. 8 T.C. 14, 28. And this is a logical result, for initially the Commissioner believed that the words of the statute made it inapplicable to taxpayers who used the retail method of inventory valuation. Therefore he cast his regulations in the same words which ultimately were held to allow use of LIFO by such taxpayers. When the court rejected the Commissioner's interpretation of the statute it simultaneously rejected his interpretation of similar words used in his regulation which rendered it no bar to the use of LIFO by "retail method" taxpayers.[4]

In the other case, Kaufmann & Baer Co. v. United States, 137 F.Supp. 725, 133 Ct.Cl. 510, certiorari denied 352 U. S. 835, 77 S.Ct. 54, 1 L.Ed.2d 54, a plaintiff, which used the retail method of inventory valuation, filed its federal tax return for the fiscal year 1942 on the basis of FIFO. It later filed an election to use LIFO for that fiscal year, as permitted by the amendment to § 22(d), which removed the prohibition contained in the original statute against the adoption of LIFO for a year during which a taxpayer issued interim reports on a non-LIFO basis. But it filed its election late—nearly a month after the cut-off date set out in the LIFO regulation. A claim for refund accompanied the election. Shortly afterwards plaintiff wrote to the Commissioner and indicated its

---

4. Macy contends that requirements contained in § 19.22(d)–2 of the regulations were inapposite to the retail method of inventory valuation and in effect prohibited it from using LIFO. The section required the filing of an application "specifying with particularity the goods to which it [LIFO] is to be applied," and provided that goods included in the opening inventory "shall be considered as having been acquired at the same time and at a unit cost equal to the actual cost of the aggregate divided by the number of units on hand." The short answer to Macy's argument is that the statute, § 22(d), which the Tax Court held applicable to "retail method" taxpayers, used similar language. See especially §§ 22(d) (1) and (2). Certainly Macy does not argue that this statutory language prohibits its use of LIFO.

desire to withdraw the election and the claim for refund. As now, the statute and the regulations permitted revocation of an election to use LIFO only with the approval of the Commissioner. The Commissioner, without referring to the purported revocation, denied the claim for refund. The plaintiff, treating its revocation as a nullity (because it did not have the Commissioner's approval), later commenced an action to recover the refund due upon its recalculation of taxes for the fiscal year 1942, using LIFO, rather than FIFO. The court found it unnecessary to decide whether plaintiff's attempt to revoke was effective, for it specifically held that in any case plaintiff's election was not timely made. Thus the court necessarily held that the regulations were applicable to a "retail method" taxpayer. The learned trial judge in the case at bar was in error in labeling this holding "*obiter dicta.*"

Third, a regulation setting forth acceptable price indices to enable Macy to convert closing inventories to LIFO was unnecessary under the statute. Section 22(d) (3) permitted, but did not require, the Commissioner to issue regulations governing the change to, and use of, LIFO so that its use would clearly reflect income. Thus the Commissioner was under no duty to issue a specific regulation prescribing the accounting methods to be used by "retail method" taxpayers to enable them to adopt LIFO. In the absence of such a regulation these taxpayers were free to adopt any method which they believed proper, subject of course to the Commissioner's approval. Certainly Macy was not prejudiced by this procedure, for it, together with other retailers, had price indices prepared by the National Industrial Conference Board which it used for its annual report. And these same indices were used by Hutzler Brothers Company in its return for the fiscal year 1942. The fact that the Commissioner only in 1948 came to issue information concerning acceptable indices is of no moment. He had the discretion to do this at any time he chose.

Ultimately Macy's argument is that it failed to file a timely election because the Commissioner maintained the position that LIFO was not available to users of the "retail method." Although this argument evokes a certain sympathy it is unavailing as an excuse for Macy's delinquency. As Judge Littleton said in Kaufmann & Baer Co. v. United States, supra, 137 F.Supp. 725, 730, 133 Ct.Cl. 510, certiorari denied 352 U.S. 835, 77 S.Ct. 54, 1 L.Ed.2d 54: "The Commissioner's interpretation of the applicable sections to mean that retailers using dollar totals rather than specific items could not use the LIFO method was erroneous. If the plaintiff wanted to use the LIFO method it should have filed its returns on that basis and have made a timely election to use the method, as did other taxpayers. The Commissioner's failure to act on the election to use LIFO did not prejudice plaintiff. It could have sought action by the Commissioner or from the courts if it desired." Hutzler Brothers Company and some seventy other similarly situated taxpayers took the necessary steps and ultimately succeeded. They were bound by their 1942 elections to use LIFO thereafter, while Macy, if it were successful here, would have had the benefit of six years' hindsight in deciding whether or not to elect LIFO for the fiscal year 1942.

In summary, Macy, if it chose to avail itself of the LIFO method for the fiscal year 1942, had to file its application at the time and in the manner prescribed by the Commissioner. His valid and applicable regulation required an election on or before March 10, 1943. Macy failed to meet this requirement. It is no excuse that this failure occurred because the Commissioner opposed Macy's exercise of its statutory right or a succeeding Commissioner erroneously considered the excuse valid. Not thus is the United States of America to be estopped in the collection of its revenue. Automobile Club of Michigan v. C. I. R., 353 U.S. 180, 183–184, 77 S.Ct. 707, 1 L.Ed.2d 746. Accordingly the lower court erred in awarding summary judgment to Macy.

Reversed and remanded for summary judgment for defendant.

On Petition for Rehearing.

Plaintiffs-appellees urge as a basis for rehearing of our reversal of the judgment below in their favor that the recent decision of the Court of Claims in Joseph Horne Co. v. United States, Ct.Cl., 161 F.Supp. 580, is in conflict with our disposition of this case in that it implicitly rejects the prior decision of that court in Kaufmann & Baer Co. v. United States, 137 F.Supp. 725, 133 Ct.Cl. 510, certiorari denied 352 U.S. 835, 77 S.Ct. 54, 1 L.Ed.2d 54, which we cited as holding that the pre-1948 LIFO regulations were applicable to "retail method" taxpayers. But a careful consideration of the cited case convinces us that this contention is without merit. There is nothing to suggest that the court there thought it was overruling its earlier decision, which is not even cited in either the prevailing or the dissenting opinion. Actually this late case deals with a different statutory provision and a different situation—that of "involuntary liquidation"—than our present issue. Concededly it can be applicable only by a process of reasoning by implication and analogy which we find unpersuasive.

The issue in the Horne case was whether Congress intended, in passing in 1950 as an amendment to I.R.C.1939, § 22(d) (6) (A), 64 Stat. 592, Pub.L. 756, 81st Cong., 2d Sess. (1950), 26 U.S.C.A. § 22(d) (6) (A), to allow taxpayers like Horne the use of the involuntary liquidation provisions therein contained for tax years prior to 1948. Neither the Public Law nor § 22(d) (6) (A) is applicable to the problems raised in this case, which are governed by I.R.C.1939, § 22(d) (2) and (3). The provisions involved in the Horne case were for the benefit of LIFO users; and Horne, unlike Macy, filed a timely election to use LIFO in 1942 and filed its returns for the years in question on that basis. It failed, however, to file the required elections to invoke the involuntary liquidation privileges because the system of indices that it used to convert its inventories to LIFO (storewide indices) did not disclose the so-called involuntary liquidations. When in 1948 the Commissioner of Internal Revenue published acceptable indices (based on departmental, rather than storewide, experience) Horne recalculated its prior conversions and discovered involuntary liquidations in certain departments which it then wished to utilize for their tax benefits. It was foreclosed from doing this because of its failure to make timely elections in the past. Congress then passed 64 Stat. 592, and the Court of Claims held that by it Congress intended to provide relief for taxpayers like Horne which did file timely elections to use LIFO, but computed inventories on other than the acceptable departmental bases.

Macy argues that Horne could not have prevailed in the Court of Claims unless the pre-1948 regulations were inapplicable to "retail method" taxpayers. It seems to be saying that if the regulations applied, Horne had to comply with them by filing inventories using departmental price indices which would have disclosed involuntary liquidations. Obviously, however, prior to 1948 the Commissioner, in his discretion, had issued no regulations stating acceptable indices. Therefore prior to 1948 Horne could use any method subject to the Commissioner's approval, and storewide indices were conditionally acceptable. Thus Horne's proper compliance with applicable regulations did not show involuntary liquidations. So the Court of Claims decided that Congress intended to give relief to taxpayers who otherwise would be harmed by the Commissioner's failure to publish acceptable indices sooner. Its conclusion is not at all inconsistent with its holding in the Kaufmann & Baer Co. case that the LIFO regulations were applicable (as far as they went) to retail method taxpayers prior to 1948; nor is it inconsistent with our disposition of the present appeal. The other points raised in the petition for rehearing were previously considered and rejected by us.

Petition denied.