IRVING FALK, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 81372, 82052, 83526, 83527, 83528, 87526–87528. Filed March 14, 1962.

---

[1] Proceedings of the following petitioners are consolidated herewith: Irving Falk, Docket Nos. 82052, 83526, 87526; Evalene Falk, Docket Nos. 83527, 87527; Morris Milstein and Ada Milstein, Docket Nos. 83528, 87528.

*E. Charles Eichenbaum, Esq.*, and *W. S. Miller, Jr., Esq.*, for the petitioners.

*John P. Higgins, Esq.*, for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in petitioners' income tax for the years and in the amounts as follows:

| IRVING FALK | | |
|---|---|---|
| Docket No. | Year | Income tax |
| 82052 | 1954 | $11,140.70 |
| 81372 | 1955 | 15,575.32 |
| 83526 | 1956 | 18,691.95 |
| 87526 | 1957 | 12,769.13 |

| EVALENE FALK | | |
|---|---|---|
| Docket No. | Year | Income tax |
| 83527 | 1956 | $18,691.95 |
| 87527 | 1957 | 12,769.13 |

| MORRIS MILSTEIN AND ADA MILSTEIN | | | |
|---|---|---|---|
| Docket No. | Year | Income tax | Sec. 294(d)(2), I.R.C. 1939 |
| 83528 | 1954 | $2,259.02 | $172.59 |
| 83528 | 1955 | 3,813.49 | |
| 83528 | 1956 | 4,636.78 | |
| 87528 | 1957 | 3,046.02 | |

The issues for decision are:

(1) Whether petitioners initiated the change in the year 1954 from the cash to an accrual method of accounting in computing the net income of a partnership of which two of them were the partners.

(2) If petitioners did initiate the change in the partnership's method of accounting, did they file a proper election under the provisions of section 481(b)(4)(B) of the Internal Revenue Code of 1954 to treat adjustments for years prior to 1954 as taxable over a 10-year period beginning with the year 1958?

(3) Whether petitioners Morris Milstein and Ada Milstein are liable for an addition to tax for the year 1954 under section 294(d)(2) of the Internal Revenue Code of 1939 for a substantial underestimation of estimated tax.

### FINDINGS OF FACT.

Petitioners Irving Falk and Evalene Falk were husband and wife during the years 1954 through 1958, residing in Greggton, Texas.

They filed joint income tax returns for the years 1954, 1955, 1956, and 1957 with the district director of internal revenue at Dallas, Texas.

Petitioners Morris Milstein and Ada Milstein were husband and wife during the years 1954 through 1958 residing at Greggton, Texas. They filed joint income tax returns for the years 1954, 1955, 1956, and 1957 with the district director of internal revenue at Dallas, Texas.

Petitioners Irving Falk and Morris Milstein during the taxable years here involved were the sole partners of a partnership organized in 1936 and operated in Longview, Texas, under the name of Texas Scrap & Material Company (hereinafter referred to as the partnership). The name of the partnership was changed in 1957 to the F & M Company. Petitioners Irving Falk and Morris Milstein have been the sole partners in this partnership at least since the beginning of the year 1952 until the present time.

Petitioners Evalene Falk and Ada Milstein are involved in this proceeding only because of the filing of joint returns with their respective husbands and their marital community interest in the partnership income.

During the years involved in this case the partnership engaged in the purchase and sale of both scrap steel and new industrial steel products. For years prior to 1954 the partnership maintained its books and records and filed its Federal partnership returns of income on the cash basis of accounting and on the basis of a calendar year. The partnership's 1954 return of income which was filed in 1955 was prepared on an accrual method of accounting without making any adjustments as of the beginning of 1954 because of the change in the method of reporting income from the cash to an accrual basis. This return contained a footnote on page 9 to the statement that it was prepared on an accrual method which read as follows: "Accrual Method in accordance with instruction of Revenue Agent."

In September 1954 a revenue agent was engaged in making an audit of the books and records of the partnership. He stated to one of the partners and to the certified public accountant who had for a number of years prior to 1952 and throughout the years here involved supervised the annual audits and the preparation of returns of income for the partnership that he had come to check the partnership's records for the years 1952 and 1953. This audit was the first ever made by an internal revenue agent of the books of the partnership or of the personal returns of petitioner Irving Falk (hereinafter referred to as Falk). At a meeting attended by the partnership's certified public accountant, Falk, and the revenue agent on September 20, 1954, the agent told the partnership's accountant and Falk that the partnership should take inventories in 1954, and Falk said that they would. The agent also told the partnership's accountant and Falk that the proper

accounting method for keeping the partnership's records and filing its 1954 return was an accrual basis and that the partnership should be put on that basis in 1954. The accountant asked the agent to make this change in the method of computing the partnership's income effective in 1952 and the agent replied that he would not do this since certain partnership income would escape taxes if he changed the method of reporting income for the year 1952.

The partnership's accountant after this meeting with the internal revenue agent, consulted an attorney with respect to the tax effect of changing the partnership's method of accounting as discussed in his conversation with the revenue agent.

After the meeting of September 20, 1954, with the internal revenue agent, neither the partnership's accountant nor the partners heard anything further from the agent nor from any person connected with the Internal Revenue Service with respect to the preparation and filing of the partnership's 1954 return of income prior to the date of the filing of that return. In supervising the preparation and filing of the partnership's 1954 return of income the partnership's accountant required that the notation be placed on the return stating that it was being filed on an accrual method in accordance with the instruction of the revenue agent.

The internal revenue agent who talked with the partnership's accountant and Falk submitted a report with respect to the partnership's income for the year 1952 on September 24, 1954, in which he recommended no change in the income as reported. This report contained the following comment:

Taxpayer is a scrap iron & metal dealer, and dealer in industrial steel. The taxpayer apparently has substantial inventories, but the taxpayer does not take a physical inventory, or record inventories. Inventories were not taken into account in filing the return. The taxpayer also has substantial accounts receivable and accounts payable. Sales, purchases, and expenses, however, are reported on the cash basis. In accordance with the regulations the taxpayer should be on the accrual basis. Under current court rulings it appears that to change the taxpayer to the accrual basis at this time, would result in the loss of tax on the opening inventory and accounts receivable, which are substantial at the beginning of the first open year.

It may be possible to change the taxpayer over to the accrual basis, when regulations are written, under Sec. 481 of the Internal Revenue Code of 1954, without the Government losing substantial revenue.

Forms 941 and 940 were examined from retained copies and found correct as filed. Income and expenses appear correct as reported (on the cash basis.)

The agent had no independent recollection of the examination of the partnership returns.

A different revenue agent examined the partnership return of income for 1953. This examination was made on April 16, 1956. This agent proposed several minor adjustments to the income as reported

in the partnership return for the year 1953, but he did not make any adjustment to change the partnership's method of accounting to an accrual basis. Petitioners agreed with the adjustments to their income for the year 1953 resulting from the changes made by the revenue agent in the partnership income.

Subsequent to April 15, 1956, the same revenue agent who had audited the partnership return for the year 1953 made an examination of the partnership return for 1954 and proposed the adjustments which are involved in this case.

On May 18, 1959, Falk and Morris Milstein filed a document with the district director of internal revenue at Dallas, Texas, which reads as follows:

ELECTION UNDER SECTION 481(b)(4)(B), INTERNAL REVENUE CODE OF 1954

The undersigned individuals are partners in F and M Company, a partnership, Greggton, Texas, which company is the continuing partnership formerly known as Texas Scrap and Material Company, Greggton, Texas. In the filing of its Federal Income Tax Return for the year 1954, Texas Scrap and Material Company used the accrual method of accounting, whereas the cash method of accounting had been used in prior years. The taxpayers contend that this change in method of accounting was required by and approved in advance by the Commissioner of Internal Revenue and/or his duly authorized agents.

The Commissioner contends that the change of method of accounting was without the advance approval of the Commissioner as required by law, and he has proposed deficiences based on Section 481 of the Internal Revenue Code.

Without waiving the rights of the undersigned to contest any deficiencies asserted by the Commissioner on any grounds which taxpayers may deem appropriate, taxpayers wish to assert their right of election under Section 481(b)(4)(B), Internal Revenue Code of 1954.

Therefore, taxpayers hereby elect, in the event that the change of accounting method in 1954 shall be finally determined to have been without the approval of the Commissioner, or if in any event it is finally determined that the adjustments asserted by the Commissioner shall be required to be made under the provisions of Section 481, then the undersigned taxpayers elect to take the determined adjustments into account in the 10 year period beginning with the first taxable year beginning after December 31, 1957; and, in the event said adjustments are finally determined to be required to be made, taxpayers agree to include 1/10th of such adjustments in taxable income for such years in the manner provided by Reg. Section 1.481-4 (TD 636, 2-19-59).

/s/  Irving Falk
     IRVING FALK
/s/  Morris Milstein
     MORRIS MILSTEIN
                              *May 15, 1959*

In the statutory notice issued to Falk for the year 1954, the community income of petitioners Irving Falk and Evalene Falk was increased by the amount of $21,064.99 which represented the communities' share

of the pre-1954 adjustments for the year 1954 to the partnership income.[2] This adjustment was explained as follows:

Exhibit A

Texas Scrap and Material Company a Partnership

Taxable Year Ended December 31, 1954

| | |
|---|---|
| Ordinary net income reported on partnership return | $47,501.08 |
| Additional income: (1) Pre-1954 adjustments | 28,086.65 |
| Ordinary net income of partnership as determined | $75,587.73 |

(1) It is held that your partnership voluntarily changed its method of accounting from the cash method to the accrual method without securing permission as required by Section 446 of the Internal Revenue Code of 1954.

Following are the adjustments required to be taken into account by Section 481(a)(2) of the Internal Revenue Code of 1954 and the years to be taken into account as required by Section 481(b)(4)(B) of the Internal Revenue Code of 1954:

| | |
|---|---|
| Inventory January 1, 1954 | $203,947.00 |
| Accounts receivable January 1, 1954 | 119,116.92 |
| Accounts payable January 1, 1954 | (42,197.44) |
| Total adjustment | $280,866.48 |

To be taken into account as follows:

| | | | |
|---|---|---|---|
| 1954 | $28,086.65 | 1960 | $28,086.65 |
| 1955 | 28,086.65 | 1961 | 28,086.65 |
| 1956 | 28,086.65 | 1962 | 28,086.65 |
| 1957 | 28,086.65 | 1963 | 28,086.63 |
| 1958 | 28,086.65 | | |
| 1959 | 28,086.65 | | $280,866.48 |

A similar statutory notice was issued to petitioner Evalene Falk. In the statutory notice issued to petitioners Morris Milstein and Ada Milstein for the year 1954, the community income was increased by the amount of $7,021.66, which represented respondent's determination of their share of the adjustment of partnership income for years prior to 1954 applicable to the year 1954. The explanation of the adjustment was the same as that given to Falk. Similar adjustments were made to the incomes of Irving Falk and Evalene Falk and Morris Milstein and Ada Milstein for each of the years 1955, 1956, and 1957 to include therein the allocable portion of the adjustments to partnership income for years prior to 1954 as determined by respondent.

In the statutory notice issued to Morris Milstein and Ada Milstein for the year 1954, respondent determined an addition to tax for sub-

---

[2] The $28,086.65 of additional partnership income for 1954 was attributed $21,064.99 to Irving Falk and Evalene Falk and $7,021.66 to Morris Milstein and Ada Milstein.

stantial underestimation of estimated tax under the provisions of section 294(d)(2) of the Internal Revenue Code of 1939.

OPINION.

Section 481(a) of the Internal Revenue Code of 1954 [3] provides for the inclusion in a taxpayer's income where there has been a change in accounting method of those adjustments necessary solely by reason of the change to prevent amounts from being duplicated or omitted except that adjustments for years prior to those governed by the Internal Revenue Code of 1954 shall not be made unless the change was initiated by the taxpayer. [4]  As originally enacted, section 481(a) did not exclude from the exception adjustments attributable to changes initiated by the taxpayer.  This provision was added by section 24 of the Technical Amendments Act of 1958 (Pub. L. 85–866, 72 Stat. 1606).  The committee report (H. Rept. No. 775, 85th Cong., 1st Sess. (1957), 1958–3 C.B. 811) which dealt with the addition of this provision to section 481(a) called attention to the fact that under the 1939 Code where a taxpayer applied to change his method of accounting, he was required to make certain adjustments in the year of change to prevent income or expenses from being included or deducted more than once or to prevent their omission entirely, but that where the Internal Revenue Service had required taxpayers to change their method of accounting, the courts generally did not require these adjustments to be made.  This report further stated that section 481 requires these adjustments to be made to the extent they are attributable to 1954 or subsequent years but not if attributable to years before the application of the 1954 Code and that there appears to be no reason why the pre-1954 Code year adjustments should not be made when taxpayers of their own volition have changed their method of accounting.  This committee report states: [5]

Changes in methods of accounting initiated by the taxpayer include a change in method of accounting which he originates, by requesting permission of the Commissioner to change, and also cases where taxpayer shifts from one method of accounting to another without the Commissioner's permission.  A change in

---

[3] All code references are to the Internal Revenue Code of 1954 unless otherwise noted.

[4] SEC. 481.  ADJUSTMENTS REQUIRED BY CHANGES IN METHOD OF ACCOUNTING.

(a) GENERAL RULE.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")—

(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.

[5] H. Rept. No. 775, p. 20.  *Section 24—Adjustments required by changes in method of accounting.*

the taxpayer's method of accounting required by a revenue agent upon examination of the taxpayer's return would not, however, be considered as initiated by the taxpayer.

The partnership did not request permission from the Commissioner to change its method of accounting, and if it is to be considered that the petitioners initiated the change, this must come from the fact that the partnership return for the year 1954 was filed on an accrual basis even though it carried the notation that this change in accounting method was made in accordance with instructions of a revenue agent. Where the Commissioner after examination of a return filed on a different method of accounting from that previously used by a taxpayer accepts the return as filed, his action has generally been held to constitute an approval of the change in method of accounting to the same extent as if an application to change the method had been made and approved. *Gus Blass Co.*, 9 T.C. 15, 35 (1947), and *Geometric Stamping Co.*, 26 T.C. 301, 304 (1956). Cf. *Advance Truck Company* v. *Commissioner*, 262 F. 2d 388 (C. A. 9, 1958), affirming 29 T.C. 666 (1958). If the partnership had applied to the Commissioner to change its method of accounting, there would be no question that it would have initiated the change by such request. If the partnership had continued to maintain its books and file its return of income on the cash basis throughout the year 1954 but the Commissioner in a statutory notice of deficiency based upon a report of a revenue agent had recomputed the income for that year on an accrual basis, the change in accounting method would have been required by the Commissioner and not initiated by the taxpayer. Cf. *David W. Hughes*, 22 T.C. 1 (1954). It appears from the committee report with respect to the amendment made by the Technical Amendments Act of 1958 to section 481(a) that Congress considered that where a revenue agent during the course of his investigation of a taxpayer's return proposed that his method of accounting be changed and such proposal was accepted by the taxpayer, the change would not be initiated by the taxpayer. It would seem logical that a taxpayer who accepted a change as proposed by an internal revenue agent for the year the agent was investigating should be placed in no less favorable position than one who contested the revenue agent's proposed change to the highest administrative level and did not accept it until receipt of an official statutory notice of deficiency from the Commissioner.

In the instant case, the revenue agent who petitioners contend instructed and required that a change in the partnership's method of accounting be made was investigating the partnership return of income for the year 1952 (and possibly 1953, although his report did

not cover that year and another agent did investigate the year 1953 at a later date) and specifically refused to make a change in the year he was investigating because of his belief that it would have an adverse effect on the revenue. Petitioners attempted to establish through the testimony of the partnership's certified public accountant and Falk that the revenue agent instructed and required the partnership to make the change and that the change would not have been made by the partnership in 1954 except for the revenue agent's instructions. The partnership's certified public accountant was asked whether the revenue agent gave him any instructions and answered, "He did." The accountant was then asked what the instructions were and stated, "He told me in 1954 he wanted—that was in 1954 that he was there—he told me to be sure and instruct my client and see to it that an inventory was taken December 31, 1954, and for us to put ourselves on the accrual basis for the year 1954." The accountant also, in response to the question "If the agent had not required this change, would you have voluntarily changed the method of accounting used by this partnership?", replied, "No, sir." Upon cross-examination, the accountant stated that he was confused by the provisions of section 481 and consulted an attorney to obtain help with respect to understanding this section but that the attorney was not very helpful and he "couldn't advise my taxpayer, my client, to do anything because I didn't know just exactly what they meant." The substance of Falk's testimony is that he left the decision with respect to the method of accounting to be used in filing the partnership's 1954 return with the partnership's accountant.

Upon considering all the evidence, we have drawn therefrom the inference that the agent told the accountant and Falk to have the partnership take an inventory for 1954 and that a proper method of keeping the partnership's books and reporting its income was an accrual basis. However, we do not infer from the testimony that the agent instructed or required that the partnership return of income for 1954 be filed on an accrual basis. It is clear from the report of the agent that he was unwilling to recommend that the partnership be required to change its method of accounting even though in his opinion the cash method was not a proper one.

The partnership's accountant might not have advised the partnership to change its method of keeping its accounts and filing its returns of income from the cash to an accrual basis for the year 1954 had this matter not been discussed with him by the revenue agent investigating the partnership's 1952 return. Nevertheless, our inference from his testimony is that he did not consider that the partnership was required because of the revenue agent's statement to file its 1954 return on an accrual basis and did not advise the partnership

so to file in reliance upon and because of the statement of the revenue agent. If the accountant had considered that the partnership was required to file on an accrual method, he would not have found it necessary to consult an attorney as to the meaning of the provisions of section 481. When the return of the partnership was being prepared in 1955 the provisions of section 481(a) were such that the accountant might well have assumed that the partnership's method of accounting could be changed to an accrual basis in 1954 and the 1954 return filed on that basis without having adjustments for years prior to 1954 taken into consideration. Petitioners do not now contend that an accrual method is not necessary to reflect clearly the partnership income. It is to be noted that when section 481(a)(2) was amended in 1958 by the Technical Amendments Act, taxpayers who had changed their method of accounting without applying to the Commissioner for permission to make the change were permitted under section 29(e) of that Act to elect to return to the method of accounting used before the change was made. Insofar as the evidence here shows, petitioners made no effort to avail themselves of this election and there is no explanation in the record of why they did not do so. Cf. *Southeast Equipment Corporation*, 33 T.C. 702 (1960), affd. 289 F. 2d 493 (C.A. 6, 1961).

Since we have concluded that the revenue agent merely suggested to, as distinguished from instructed, the partnership's accountant and Falk that the partnership's 1954 return of income be filed on an accrual basis, we do not reach respondent's contention that the revenue agent was not authorized to instruct a taxpayer to change his method of accounting, and therefore a change made because of any such purported instruction would as a matter of law be a voluntary change.

Petitioners rely on *Lindner* v. *United States*, —— F. Supp. —— (D. Utah, Mar. 27, 1961), now on appeal. Respondent contends that the *Lindner* case is incorrectly decided. We need not pass upon this contention since the facts in *Lindner* v. *United States*, *supra*, are distinguishable from those in the instant case. In the *Lindner* case the court found that the revenue agent instructed the taxpayers to change their accounting method and suspended his investigation until the 1955 return could be filed on the changed basis. The court in *Lindner* v. *United States*, *supra*, found that the taxpayers made the change only because they were required by the revenue agent to do so, and on this basis distinguished *Brookshire* v. *Commissioner*, 273 F. 2d 638 (C.A. 4, 1960), affirming 31 T.C. 1157 (1959), which involved a change suggested by a revenue agent. On the basis of the facts in the instant case, we hold that the partnership initiated the change in its accounting method from a cash to an accrual basis in the year 1954. Therefore, the adjustments required by section 481 for years prior to the year 1954 are proper.

Section 481(b) (4) (B) [6] insofar as here pertinent, provides that if the year of change from one method of accounting to another was a taxable year ending before January 1, 1958, and under the provisions of section 481(a) (2) as amended by the Technical Amendments Act of 1958, adjustments for years prior to 1954 would be taken into consideration, the taxpayer may elect at such time and in such manner as the Secretary or his delegate shall by regulations prescribe, to have the 10-year period over which adjustments are to be spread begin with his first taxable year which begins after December 31, 1957. The regulations [7] issued by the Commissioner pursuant to this provision state that a taxpayer who has changed his method of accounting without advance approval of the Commissioner may make the election under section 481(b) (4) (B) at any time before May 21, 1959, by filing a statement of election with the district director of internal revenue with whom he filed his income tax return for the taxable year of the change. These regulations provide that the election shall be in the form of a written statement to the effect that the taxpayer elects under section 481(b) (4) (B) to take the adjustments determined in accordance with section 481(b) (4) (A) into account in the 10-year period beginning with the first taxable year beginning after Decem-

[6] Sec. 481(b)(4)(B). YEARS IN WHICH AMOUNTS ARE TO BE TAKEN INTO ACCOUNT.— One-tenth of the net amount of the adjustments described in subparagraph (A) shall (except as provided in subparagraph (C) be taken into account in each of the 10 taxable years beginning with the year of the change. The amount to be taken into account for each taxable year in the 10-year period shall be taken into account whether or not for such year the assessment of tax is prevented by operation of any law or rule of law. If the year of the change was a taxable year ending before January 1, 1958, and if the taxpayer so elects (at such time and in such manner as the Secretary or his delegate shall by regulations prescribe), the 10-year period shall begin with the first taxable year which begins after December 31, 1957. If the taxpayer elects under the preceding sentence to begin the 10-year period with the first taxable year which begins after December 31, 1957, the 10-year period shall be reduced by the number of years, beginning with the year of change, in respect of which assessment of tax is prevented by operation of any law or rule of law on the date of the enactment of the Technical Amendments Act of 1958.

[7] Sec. 1.481–4(b)|(4), Income Tax Regs. The election provided in section 481(b)·(4) (B) and subparagraph (1) of this paragraph shall be made—

(i) In cases where the taxpayer requests the Commissioner's permission to change his method of accounting, at the time such request is made or at such other time as the Commissioner, prior to granting the taxpayer permission to make the change, may afford the taxpayer an opportunity to make such election ; or

(ii) In cases where the taxpayer changed his method of accounting without the advance approval of the Commissioner and has not made an election to return to his former method of accounting in accordance with section 1.481–6 at any time before May 21, 1959.

The election shall be in the form of a written statement to the effect that the taxpayer elects under section 481(b) (4) (B) to take the adjustments determined in accordance with section 481(b) (4) (A) into account in the 10-year period beginning with the first taxable year beginning after December 31, 1957, and that the taxpayer agrees to include one-tenth of such adjustments in taxable income for such years in the manner provided in subparagraph (2) of this paragraph. In the case of a partnership, the election shall be made by the individual partners. In the case of a taxpayer referred to in subdivision (i) of this subparagraph, the statement of election shall be filed with the Commissioner of Internal Revenue, Attention : T :R, Washington 25, D.C. In the case of a taxpayer referred to in subdivision (ii) of this subparagraph, the statement of election shall be filed with the district director with whom he filed his income tax return for the taxable year of the change.

ber 31, 1957, and that the taxpayer agrees to include one-tenth of such adjustment in taxable income for such years in the manner provided in section 1.481–4(b)(2) of the Income Tax Regulations. In the case of a partnership the election shall be made by the individual partners.

The statement filed by petitioners Falk and Morris Milstein on May 18, 1959, was within the time provided in the regulations and was filed with the district director as designated by the regulations. This statement which is set forth in full in our findings stated that petitioners elected under section 481(b)(4)(B) to have the adjustments taken into account with the first taxable year beginning after December 31, 1957, if it should be finally determined that the adjustments as asserted by the Commissioner were required to be made under the provisions of section 481 of the Internal Revenue Code of 1954. The petitioners who were the partners in the partnership stated that they agreed to the inclusion of one-tenth of the adjustments if any should finally be determined to be due in taxable income for each year of the 10-year period. From a reading of the election filed by Falk and Morris Milstein and of the regulations, it appears that this election is in accordance with the regulations unless the reservation by petitioners of their right to contest the inclusion of any adjustment for a year prior to 1954 in their income for any year is sufficient to cause their election to fail to comply with the regulations.

Petitioners do not contend that they are not required to comply with respondent's regulations but argue that their election complied with these regulations. Respondent argues that since petitioners' election was not unconditional, it was not strictly in accordance with his regulations and therefore not a proper election.

Neither petitioners nor respondent cites any authority in support of the arguments made. It was necessary that petitioners make their election within the time prescribed in the Commissioner's regulations if they wanted to have the benefits of that election under any circumstances. Cf. *Ruud Manufacturing Co.*, 10 T.C. 14 (1948), affirmed per curiam 173 F. 2d 222 (C.A. 3, 1949) ; *R. H. Macy & Co.* v. *United States*, 255 F. 2d 884 (C.A. 2, 1958) ; and *Kaufmann & Baer Company* v. *United States*, 137 F. Supp. 725 (Ct. Cl. 1956), certiorari denied 352 U.S. 835.

We agree with petitioners that the document filed by them entitled, "Election under Section 481(b)(4)(B) of the Internal Revenue Code" was an election in accordance with respondent's regulations and that petitioners are entitled to have their tax computed in accordance with that election.

No evidence was offered with respect to respondent's determination of the addition to tax in the case of Morris Milstein and Ada Milstein for the year 1954 under the provisions of section 294(d)(2) of the

Internal Revenue Code of 1939 for substantial underestimation of estimated tax. It appears that our holding with respect to the validity of the election made by Falk and Morris Milstein may result in the elimination of this addition to tax. However, since the record is not completely clear in this respect,

*Decision will be entered under Rule 50.*